COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Humphreys and Millette
Argued at Chesapeake, Virginia


THEOPHYLIS ARTIS
                                                           OPINION BY
v.        Record No. 1529-07-1              JUDGE ROBERT J. HUMPHREYS
                                                           JULY 22, 2008
KRYSTAL R. JONES


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Richard E. Garriott, Jr. (Kira A. Ligato; Clarke, Dolph, Rapaport,
Hull, Brunick, and Garriott, P.L.C., on brief), for appellant.

Allyson Denise Lee for appellee.


Theophylis Artis ("father") appeals an order awarding primary physical custody of his

son, J.H., to J.H.'s mother, Krystal Jones ("mother").  Father argues that (1) the trial court did

not adequately communicate the basis of its decision either orally or in writing, as required by

Code § 20-124.3, and (2) the evidence was insufficient to support the finding that awarding

primary physical custody to mother was in J.H.'s best interests.  For the following reasons, we

agree with father that the trial court did not sufficiently communicate the basis of its decision to

the parties.  We reverse and remand for further proceedings consistent with this opinion.

BACKGROUND

On appeal, we must view the evidence, and all reasonable inferences flowing from the

evidence, in a light most favorable to mother as the party prevailing below.  Congdon v.

Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle requires us to

'discard the evidence' of [father] which conflicts, either directly or inferentially, with the

evidence presented by [mother] at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). So viewed, the evidence proved the following.

Mother and father began dating in 1998. J.H. was born in 2002. Mother and father never married, and father ended the relationship after learning that mother was pregnant. Mother also has a son and a daughter from previous relationships. Her son was a fifteen-year-old high school student at the time of trial, and her daughter was a twenty-year-old student at Old Dominion University. Both children love their younger half-brother J.H., and they all have a close relationship with their mother. In the fall of 2002, mother began dating another man who was married at the time, but was already separated from his wife with a divorce pending.

The parties' relationship began to deteriorate when J.H. was around one year old, and the relationship has remained hostile ever since. For example, father has made numerous allegations of child abuse against mother to Child Protective Services ("CPS"), none of which CPS has acted upon. Father has also been both physically and verbally abusive toward mother in the past. One particular flashpoint for hostilities between the parties has been when the parties meet to exchange J.H. In March 2005, mother and father were exchanging J.H. at a convenience store, and a friend of father's was also present with his child. After receiving J.H., mother asked father to move his car so that she could leave. Father then placed J.H. in the back of his friend's car so that he might move his car. Mother then apparently phoned the police and reported that father was kidnapping J.H. Father called mother a "bitch" and a "whore" in front of J.H. and mother's other children, who were also present.

On October 20, 2004, the Chesapeake Juvenile and Domestic Relations District Court ("J&DR") entered an order establishing joint legal custody and shared physical custody of J.H. Prior to the entry of this order, there had been no formal custody arrangement, but J.H. had spent the majority of his time with mother. This order also directed the parties to seek parental

counseling to attempt to resolve the difficulties between them. Mother was uncooperative in seeking counseling, and was held in contempt of court once for not cooperating with this order.

In May 2005, the parties began seeing Richard Tavolucci ("Tavolucci"), a parental counselor. Tavolucci stated that both mother and father were good parents and that the two should share joint physical custody equally, thereby minimizing the number of times the parties would exchange J.H. and ensuring that the two would have less opportunity for hostilities to ensue. J.H. reported to Tavolucci that he was "terrified" of returning to mother's house from father's because mother always spanked him, and had also punched him in the back on at least one occasion. When Tavolucci asked J.H. if father had hit him, J.H. replied that he had not, but that mother had told him to say that he had.

In October 2005, mother also began taking J.H. to see Margaret McDowell ("McDowell"), a licensed clinical social worker and "play therapist," who provided J.H. with dolls and other playthings to act out various scenarios from his life. McDowell opined that one parent should have primary custody because it was detrimental to J.H.'s well-being to be equally exposed to two different parenting styles. Despite only meeting with father for one counseling session, McDowell suggested that, based on her assessments, mother was the more "nurturing" and "protective" parent and that J.H. had a greater emotional attachment to mother than to father. However, McDowell did not specifically recommend that mother have primary physical custody.

On March 22, 2006, in response to father's petition to modify custody, the J&DR awarded joint legal and physical custody to mother and father, with each parent having two weeks of continuous physical custody. Mother appealed to the Circuit Court of the City of Chesapeake ("trial court").

At trial *de novo* over three days in September and October 2006, the parties presented the evidence referenced above, and Tavolucci and McDowell both presented their above-referenced

- 3 -

opinions. Mother and mother's older children all testified that since the beginning of the

two-week continuous custody arrangement, J.H. had started to cry whenever he was preparing to

go back to father's house. Various witnesses, including J.H's teachers, testified that J.H.'s

behavior became more aggressive, including hitting other students and using profanity, after the

imposition of the custody arrangement.

The trial court apparently found neither parent's accusations against the other parent to be

credible, stating that "if one of these parties had been bitten by a snake and the other party is

coming towards them to cut the poison out, the parties would describe it as they tried to attack

me with a knife and kill me." The court also found McDowell's opinion regarding J.H. more

credible than Tavolucci's.

The trial court did not make a ruling orally, but, after finding that a change of

circumstances had occurred for J.H. since the custody order from October 2004, stated:

> Now we go to the factors contained in [Code §] 20-124.3, which
> delineates all the factors to determine what would be in the best
> interest of the child.

> \* \* \* \* \* \* \*

> You know, . . . there's both good and bad that both mom and dad
> bring to the situation. So I think I'm going to make - I've made a
> lot of notes . . . . I'll go back and review those notes and get a
> decision out.

> \* \* \* \* \* \* \*

> It seems to the Court . . . one of [the parties] will be the primary
> custodian and the other one will have a relationship as best [as
> possible] under the circumstances.

On February 5, 2007, the trial court issued its ruling in a letter opinion, stating, in

pertinent part:

> The Court finds that the age of [J.H.] (2 at the time of the initial
> order and close to the age to begin school now), the difficult
> relationship of the mother and father--marked by constant distrust

- 4 -

of each other, complete lack of cooperation between the two regarding any consistency in [J.H.]'s development or schedule, and in the opinion of the Court no probability exists that mother and father will be able to communicate or cooperate in [J.H.]'s rearing, establishes a change in circumstance. The Court also finds that because [J.H.] is displaying difficulties due to the inconsistent parenting practices of mother and father combined with their contempt of each other, that [J.H.]'s best interest would be met by a change in the order of October 20, 2004.

The Court then pursuant to Virginia Code Section 20-124.2[,] giving primary consideration to the child's best interest considered all factors contained in Code Section 20-124.3.

The trial court then awarded primary physical custody to mother and granted reasonable visitation rights to father. Father timely appealed to this Court.

ANALYSIS

I. Compliance with Code § 20-124.3

Father first argues that the trial court did not adequately communicate the basis of its custody award to the parties as required by Code § 20-124.3. We agree.

Code § 20-124.3 lists ten factors a trial court must consider when deciding the best interests of a child for determining custody and visitation of a child. The statute concludes by directing that the trial court "communicate to the parties the basis of [its] decision either orally or in writing." We have interpreted this statute as "requir[ing] the trial court to identify the fundamental, predominating reason or reasons underlying its decision." Kane v. Szymczak, 41 Va. App. 365, 372-73, 585 S.E.2d 349, 353 (2003). "While communicating the 'basis' of the decision does not rise to the level of providing comprehensive findings of fact and conclusions of law, it does mean that the trial court must provide more to the parties than boilerplate language or a perfunctory statement that the statutory factors have been considered." Lanzalotti v. Lanzalotti, 41 Va. App. 550, 555, 586 S.E.2d 881, 883 (2003). "'The trial court must provide a case-specific explanation (one that finds its contextual meaning from the evidence before the

- 5 -

court) of the fundamental, predominating reason or reasons for the decision.'" Id. (quoting

Kane, 41 Va. App. at 373, 585 S.E.2d at 353). "The statute requires 'an express *communication*

to the parties of the basis for its decision.'" Id. (quoting Kane, 41 Va. App. at 373, 585 S.E.2d at

353) (emphasis in original). A trial court that "'fails to provide at least some of the steps in [its]

thought process leaves [it]self open to the contention that [it] did not in fact consider the required

factors.'" Woolley v. Woolley, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986) (quoting

Campolattaro v. Campolattaro, 502 A.2d 1068, 1075 (Md. Ct. Spec. App. 1986)).

At the conclusion of trial, the trial court stated orally that it found McDowell, who

recommended a primary caretaker and stated that mother was more "nurturing" than father, more

credible than Tavolucci. However, this is a credibility determination by the trial court, and not a

communication to the parties as to why it ruled as it did. At no point did the trial court state why

placement with mother would be in J.H.'s best interests, nor did it state why the factors

contained in Code § 20-124.3 influenced its decision. In fact, the record clearly shows that the

trial court had not yet reached a decision at this point.

In its subsequent letter opinion, the trial court found that a change of circumstances had

occurred, due to the "difficult relationship of the mother and the father--marked by constant

distrust of each other, complete lack of cooperation between the two regarding any consistency

in [J.H.]'s development or schedule, and . . . no probability exists that mother and father will be

able to communicate or cooperate in [J.H.]'s rearing[.]" The trial court then stated: "because

[J.H.] is displaying difficulties due to the inconsistent parenting practices of mother and father

combined with their contempt of each other, that [J.H.]'s best interest would be met by a change

in the order of October 20, 2004."[1]

_____

[1] At oral argument, counsel for the appellee asserted that subsequent to the issuance of the letter opinion, a hearing was held during which the circuit court supplemented the rationale for its decision. However, no transcript, written statement of facts, or supplemental order with

Thus, the trial court found that a change of circumstances had occurred, but did not explain how the factors contained in Code § 20-124.3 applied to determine how the best interests of the child would be served by the specific change that it ordered. Although this is more than a mere "perfunctory statement that the statutory factors have been considered[,]" Lanzalotti, 41 Va. App. at 555, 586 S.E.2d at 883, this statement fails to communicate a case-specific explanation as to why the best interests of J.H. favor placement with mother, rather than father. As such, we hold that the trial court did not sufficiently "communicate to the parties the basis of [its] decision either orally or in writing," as mandated by Code § 20-124.3.

## II. Sufficiency of the Evidence

Father next argues that the evidence was insufficient to support the trial court's finding that awarding primary physical custody of J.H. to mother was in J.H.'s best interests. Having held that the trial court did not adequately communicate the basis of its decision to the parties as required by Code § 20-124.3, we do not address the sufficiency of the evidence on appeal.

In Robinson v. Robinson, 50 Va. App. 189, 648 S.E.2d 314 (2007), we addressed Code § 20-107.1(F)'s requirement that a trial court provide written findings and conclusions of law identifying the factors in Code § 20-107.1(E) which support the trial court's decision on a spousal support award. In doing so, we discussed our previous holding in Woolley. Woolley held that "when a trial court failed to make factual findings or present any explanation of the circumstances that influenced its decision regarding spousal support, we could examine the record to determine if the trial court's decision was supported by evidence relevant to the statutory factors." Robinson, 50 Va. App. at 195, 648 S.E.2d at 317 (citing Woolley, 3 Va. App. at 345, 349 S.E.2d at 427). However, as noted in Robinson, the General Assembly

---

respect to such hearing has been made a part of the record before us. It is the duty of the parties to provide us with a record sufficiently complete to support their legal arguments. Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 42-43, 645 S.E.2d 261, 270 (2007).

amended the statute in 1998 to require the trial court to make the written findings mentioned above. Because the statute as amended did not contain a provision permitting such review by us, and specifically required the trial court to make written findings stating the basis for its decision, we concluded that the statutory amendment superseded our earlier precedent allowing us to "examine the record to determine if the decision was supported by evidence relevant to the [statutory] factors." Id. (citing Woolley, 3 Va. App. at 345, 349 S.E.2d at 427). Accordingly, we remanded the case to the trial court for reconsideration of the spousal support award based on the existing record. Id. at 196, 648 S.E.2d at 317.

The same rationale applies here in the context of Code § 20-124.3. In 1999, the General Assembly amended Code § 20-124.3 to require the trial court to "state the basis for the decision either orally or in writing." Kane, 41 Va. App. at 371, 585 S.E.2d at 352. Prior to this amendment, "the statute did not expressly require the trial court to elaborate on its findings or, for that matter, to provide any explanation for its decision." Id. This amendment, like that of Code § 20-107.1(F), contains no provision permitting an appellate court to review the record for evidence supporting the trial court's decision if the trial court does not communicate the basis of its decision as required by the statute. Accordingly, we refrain from reviewing the record ourselves. Instead, we remand the case to the trial court for a reconsideration of its custody award based on the existing record. See Robinson, 50 Va. App. at 196, 648 S.E.2d at 317.

Because the record before us does not indicate that the trial court adequately communicated the basis of its decision to the parties, we remand to the trial court for reconsideration of its custody award based consistent with this opinion.

Reversed and remanded.