COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner


DEBRA M. PICCIRILLO

                                                          MEMORANDUM OPINION[*]
v.        Record No. 2064-09-4                                PER CURIAM
                                                             AUGUST 3, 2010
WILLIAM J. ATKINS


                      FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                  Dennis J. Smith, Judge

               (David G. Hubbard; Leiser, Leiser & Hennessy, PLLC, on brief), for
               appellant.

               (Mark B. Sandground, Sr.; Heather A. Britton; Sandground Law, on
               brief), for appellee.


        Debra M. Piccirillo (mother) appeals the trial court's ruling granting physical custody of the

parties' child to William J. Atkins (father).  Mother argues that the trial court erred by (1) awarding

physical custody of the parties' child to father in light of the evidence adduced at trial and the

factors in Code § 20-124.3; (2) failing to consider that father's deceptive and unilateral relocation

from Virginia to Maryland created the "material change of circumstances" that led to the

proceedings to amend custody; (3) awarding physical custody of the parties' child to the father,

given that the trial court found father had no inclination to co-parent with mother and that father

does not respect mother's decisions, opinions or views; and (4) awarding physical custody of the

parties' child to father, which had the practical effect of relocating the child from Fairfax, Virginia

to Annapolis, Maryland, and is not in the child's best interests.  Upon reviewing the record and

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## BACKGROUND

Mother and father married on September 24, 1999. One child was born of the marriage in November 2000. The parties separated on or about October 1, 2003 and divorced on June 2, 2005.

On April 13, 2005, the trial court entered a custody consent decree, in which the parties shared joint legal custody and physical custody of their child. The visitation rotated on a week-to-week basis.

In the summer of 2006, father remarried, and now has three children with his wife, Nancy Wheeler. In January 2007, mother remarried, and mother's husband, Steven Warner, has two daughters.

In 2008, father filed a motion, on behalf of the child, for a protective order against mother and Warner because the child told father that Warner was abusing him and mother was not protecting him. The Fairfax County Juvenile and Domestic Relations District Court (the JDR court) issued preliminary protective orders on August 18, 2008, and appointed a guardian *ad litem* for the child. On September 16, 2008, the JDR court denied the motion for a protective order. The guardian *ad litem* recommended counseling for the child. Mother tried to visit with the child after the dismissal of the motion for protective order, but was unable to do so until after the custody hearing in the trial court in January 2009. The child refused to visit with mother.

On September 2, 2008, mother filed a motion to modify custody in the trial court, and on September 19, 2008, father filed a "cross-motion" to modify custody. Father retained the services of Nancy S. Prugh, a licensed social worker, to provide counseling for the child. Although mother agreed that the child needed counseling, mother objected to Prugh as the

child's counselor because mother believed that Prugh was biased against her. Father filed a motion with the court requesting that the trial court name Prugh as the child's counselor. Father also requested a custody evaluation. The trial court granted father's motions. Mother asked the court to appoint the same guardian *ad litem*, but the trial court denied the motion. Mother also questioned father's living arrangements; he has two homes, one in Annapolis, Maryland and one in McLean, Virginia.

The trial court heard the custody matter on January 13 and 14, 2009, and announced its ruling from the bench on January 15, 2009. After reviewing the Code § 20-124.3 factors, the trial court granted temporary physical custody of the child to the father and established a transitional visitation schedule with the mother. The trial court set a review date for June 2009. On June 25, 2009, the trial court heard evidence about what had transpired since January. The trial court ruled that the parties would have joint legal custody and awarded physical custody to father. The trial court established a visitation schedule for mother and ordered that the child attend school in Annapolis, Maryland. The trial court entered an order on August 12, 2009. Mother timely noted her appeal.

ANALYSIS

Issues 1 and 3 – Award of Physical Custody to Father

Mother argues that the trial court erred in awarding physical custody to father in light of the evidence adduced at trial, the Code § 20-124.3 factors, and father's refusal to co-parent with mother and respect her opinions.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

- 3 -

"As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

"Code § 20-124.3 lists ten factors a trial court must consider when deciding the best interests of a child for determining custody and visitation of a child. The statute concludes by directing that the trial court 'communicate to the parties the basis of [its] decision either orally or in writing.'" Artis v. Jones, 52 Va. App. 356, 363, 663 S.E.2d 521, 524 (2008) (quoting Code § 20-124.3).

In January 2009, the trial court discussed the Code § 20-124.3 factors at length to explain its decision.[1] In June 2009, the trial court stated, "I don't take back anything I said at the time of the initial hearing when I went through the factors in [Code § 20-124.3]."

Mother, however, argues that the trial court's ruling in June is not reconcilable with the January findings. She asserts that father remained controlling and was not interested in co-parenting with mother, as evidenced by his e-mails. Furthermore, mother contends the trial court did not explain why the child should remain with father when father had not improved his communication with her and when father intended to change the child's school to one in Annapolis.

Contrary to mother's arguments, the trial court did explain its ruling in June, and it was consistent with its findings in January. The trial court noted that mother and father's shared physical custody arrangements were no longer going to work. The trial court found that from January to June, "the situation has improved, but I don't think it's come to the point where I can put [the child] back in Ms. Piccirillo's home on a full-time basis. On top of that, time has shown that [the child] has done well in Annapolis." The child started counseling with a new therapist in

---

[1] Mother does not dispute this fact.

- 4 -

February 2009, and the new therapist testified that the child still expressed fears of his stepfather. The counselor recommended that the child remain in his father's physical custody.

In June, the trial court agreed with mother that father's tone in his e-mails were "not much better than they were" and were "basically dismissive of anything she says." The trial court explained that the parties needed to learn to communicate better with one another for the child's sake. Despite father's lack of improvement in communicating with mother, the trial court found that it was in the child's best interests to remain in father's physical custody. The trial court heard testimony that the child is doing well in father's home and is comfortable there, whereas he was not comfortable in mother's home.

"Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992).

Here, there was sufficient evidence to support the trial court's findings, and the trial court did not err in awarding physical custody to father.

### Issues 2 and 4 – Father's Relocation to Maryland

Mother argues that the trial court's award of physical custody to father has the practical effect of relocating the child from Virginia to Maryland, which she contends is against the child's best interests. Furthermore, mother asserts that the trial court erred in failing to consider that father's "deceptive and unilateral relocation" to Maryland from Virginia created the material change of circumstances that led to the custody proceedings.

"The trial court's determination of the child's best interests 'is a matter of discretion . . . , and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed.'" Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (quoting Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996)).

"In a court's decision as to the propriety of relocating the children . . . , 'the welfare of the children is of primary and paramount importance.'" Parish v. Spaulding, 26 Va. App. 566, 572, 496 S.E.2d 91, 94 (1998) (quoting Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986)).

Mother argues that father was not forthright about where he was living. In 2005, after the parties' divorce, father purchased two homes, one in Annapolis, Maryland and one in McLean, Virginia. Father's McLean home was his primary home, and his Annapolis home was his weekend and vacation home. At the September 2, 2008 JDR court hearing, father's counsel stated that father lived in Annapolis, where his wife and child lived. On September 16, 2008, father clarified that he spent the day at his McLean home and the evenings and weekends in his Annapolis home. After the child started to primarily live with him, father spent more time in Annapolis. Father was not deceptive about his living arrangements, since he explained them at each hearing.

Mother contends father's relocation to Annapolis was not in the child's best interests. The child had to switch schools, and he could not visit with his mother as often.

At the January 2009 hearing, the trial court preferred that father live with the child in Virginia; however, father's wife was pregnant with twins at the time and could not leave Annapolis. The trial court then acknowledged father's home in Annapolis and suggested a transportation schedule that would work best considering traffic. In June 2009, the trial court held that the child's best interests would be served if he continued to live with father in Annapolis. The trial court found that it was "too difficult" for the child to live in Annapolis and drive to Fairfax for school. The trial court stated, "I never intended that to be . . . a long-term permanent solution. . . . It's too difficult for a child to go through that every morning, sometimes

to be in a two-hour drive to school, and then an hour and a half drive back. It's too much time in the car for him."

Therefore, contrary to mother's argument, the trial court considered father's home in Annapolis and how that would affect the child. The child's best interests were continuing primary physical custody with father, and it was not in his best interests to travel so far to school. The trial court also considered the fact that mother and father's previous shared custody arrangements were no longer feasible. The trial court explained that although the child's relationship with mother and stepfather improved from January 2009 to June 2009, the trial court could not place the child with mother "on a full-time basis." Accordingly, the trial court ruled that the child would live with father in Annapolis and go to school there. It established a visitation schedule so that mother could regularly visit with the child.

The trial court considered the child's best interests and did not err in ruling that the child would live in Annapolis with his father.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.