COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


SELENA GUDINO

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0068-11-2                      JUDGE ROBERT J. HUMPHREYS
                                                    NOVEMBER 1, 2011

DENNIS GUDINO


              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                            Timothy J. Hauler, Judge

              Jonathan W. Ware (Freshfields Bruckhaus Deringer US LLP, on
              briefs), for appellant.

              Charles E. Powers (Terrence R. Batzli; Batzli Wood & Stiles, PC, on
              brief), for appellee.

              *Amicus Curiae*:  Domestic Violence Legal Empowerment and
              Appeals Project, Justice for Children, National Coalition Against
              Domestic Violence, and Leadership Council on Child Abuse and
              Interpersonal Violence (Carter B. Simpson; Joan Meier; Elizabeth
              Liu; SNR Denton, US LLP; George Washington University Law
              School, on brief), for appellant.

              No brief or argument by Louise A. Moore, Guardian *ad litem* for
              the children.


       Selena Gudino ("mother") appeals an order from the Circuit Court of Chesterfield County

("circuit court"), dated December 9, 2010, awarding primary physical custody of her three children

to Dennis Gudino ("father"), who resides in Tokyo, Japan.[1] Mother specifically maintains on

appeal that the circuit court erred (1) in finding that the best interests of the children were served in

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Three children were born of the marriage:  E.G., born October 1, 2000, E.X.G., born
October 23, 2001, and E.A.G., born August 1, 2004.

the custody of father, (2) in reappointing Dr. Michele Nelson as a custody evaluator for the children and in ordering mother to pay the entire fee for an independent evaluator, (3) in imposing excessive visitation costs on mother, (4) in appointing a guardian *ad litem* for the children without the evidence or findings required to do so, and (5) in requiring mother to pay half of the guardian *ad litem*'s fee. For the reasons that follow, we affirm the court below.

## I. Analysis

### A. Best Interests of the Children

Mother first contends on appeal that the circuit court erred in finding it is in the best interests of the children to be placed in the custody of father. Mother specifically contends the circuit court erred in (1) disregarding evidence of family abuse and father's adverse mental history, (2) making findings as to the mental condition of the parents as well as to the children's preferences without evidence to support them, (3) making findings as to the intellectual needs of the children contrary to the decision of both parents, and (4) failing to consider the past history of the parents in parenting and making findings not supported by the evidence.

### Standard of Review and Governing Legal Principles

"'In all child custody cases . . . the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute.'" Bottoms v. Bottoms, 249 Va. 410, 413, 457 S.E.2d 102, 104 (1995) (quoting Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986)). "When the trial court hears the evidence *ore tenus*, its findings are entitled to the weight accorded a jury verdict," and those findings should not be disturbed on appeal unless "plainly wrong or without evidence to support them." Id. at 414, 457 S.E.2d at 104-05 (citing Bailes, 231 Va. at 100, 340 S.E.2d at 827). "[A]s long as the evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999) (citation omitted). Moreover, "[a]bsent

clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms, 249 Va. at 414, 457 S.E.2d at 105 (citing Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)). The thrust of several of mother's assignments of error is essentially that this Court should give greater weight to her testimony and that of her witnesses than the circuit court did. However, an appellate court does not make its own factual findings; rather, "the appellate court should view the facts in the light most favorable to the party prevailing before the trial court." Id.

"Code § 20-124.3 lists ten factors a trial court must consider when deciding the best interests of a child for determining custody and visitation of a child. The statute concludes by directing that the trial court 'communicate to the parties the basis of [its] decision either orally or in writing.'" Artis v. Jones, 52 Va. App. 356, 363, 663 S.E.2d 521, 524 (2008) (quoting Code § 20-124.3).[2] "We

---

[2] Code § 20-124.3 provides,

> [i]n determining best interests of a child for purposes of determining custody or visitation arrangements including any pendente lite orders pursuant to § 20-103, the court shall consider the following:
>
> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
>
> 2. The age and physical and mental condition of each parent;
>
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
>
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;

have interpreted this statute as 'requir[ing] the trial court to identify the fundamental, predominating reason or reasons underlying its decision.'" Id. (quoting Kane v. Szymczak, 41 Va. App. 365, 372-73, 585 S.E.2d 349, 353 (2003)). "'While communicating the "basis" of the decision does not rise to the level of providing comprehensive findings of fact and conclusions of law, it does mean that the trial court must provide more to the parties than boilerplate language or a perfunctory statement that the statutory factors have been considered.'" Id. (quoting Lanzalotti v. Lanzalotti, 41 Va. App. 550, 555, 586 S.E.2d 881, 883 (2003)). "'As long as the trial court examines the factors, it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)). If the circuit court's findings are supported by evidence in the record, this Court will affirm. Id.

---

6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;

7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;

8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

9. Any history of family abuse as that term is defined in § 16.1-228 or sexual abuse. If the court finds such a history, the court may disregard the factors in subdivision 6; and

10. Such other factors as the court deems necessary and proper to the determination.

The judge shall communicate to the parties the basis of the decision either orally or in writing.

- 4 -

### 1. The Circuit Court's Alleged Disregard of Family Abuse

Mother argues on appeal that the circuit court abused its discretion in disregarding the history of family abuse she endured during the marriage.

Code § 20-124.3(9) requires the trial court to consider "any history of family abuse as that term is defined in § 16.1-228 or sexual abuse. If the court finds such a history, the court may disregard the factors in subdivision 6 . . . ."

> "Family abuse" means any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury and that is committed by a person against such person's family or household member. Such act includes, but is not limited to, any forceful detention, stalking, criminal sexual assault in violation of Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2, or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury.

Code § 16.1-228.

In rendering its decision, the circuit court considered each and every one of the factors contained in Code § 20-124.3. In considering factor 9, "[a]ny history of family abuse as that term is defined in § 16.1-228 or sexual abuse," the court reasoned,

> the evidence that I have heard today is in conflict and inconclusive. If all of this abuse happened as you testified to, ma'am, I'm shocked that there is not any corroborative evidence of it. If it did occur then I think Mr. Gudino has done a superb job in covering it up and excusing it . . . it could have been a pivotal factor in this case, but the evidence is in conflict and is inconclusive in the view of this Court.

Mother asserts this finding is plainly wrong, especially since her friends and family members, a former therapist, and even Dr. Nelson expressly stated that mother suffered abuse from father.

Even viewing the facts in the light most favorable to father, it is clear this couple had a volatile and, at times, physically violent history together. Mother testified to, and mother's friends and family corroborated, several instances of abuse, and father did not deny his tendency to yell and

- 5 -

scream at mother and the children. Dr. McRae observed father and mother during eight counseling sessions in Japan, and noted that father was verbally abusive toward mother, that father had anger management issues, and that he used his anger and finances to control mother. Mother testified to five different physical altercations in which father would pull mother's hair and push her to the ground.

Father admitted that he hit mother "four to five times." However, father also testified that mother often hit him and stated he only hit her if she hit him first. It is uncontested that on one occasion, mother hit father with a tea cup, causing a gash in father's head that required stitches. Mother conceded that she often "lost control" with the kids and she would lock them out of the house. She admitted that she slapped E.G. across the face. Thus, contrary to mother's assertion, the record suggests that both parties were mutually abusive to each other *and* the children, and the marriage was turbulent. While mother's evidence indicated a number of instances of verbal and physical abuse, in order to constitute "family abuse," there must be evidence, which the trial court finds credible, that the abusive conduct "results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." Code § 16.1-228. All facts pertaining to the allegation of family abuse were before the circuit court, and it appears from the record that the court did consider them. The court simply gave greater weight to the testimony of father. That finding is not plainly wrong or without evidence to support it and, therefore, it is binding on this Court. The circuit court did not, thus, err in failing to consider the couple's history of family abuse.

## 2. The Circuit Court's Findings as to the Mental Condition of the Parents and the Children's Preferences

Mother next assigns error to the circuit court's consideration of the children's preferences and in concluding they prefer to reside with father. Mother also contends the circuit court failed to consider husband's mental condition in rendering its decision.

- 6 -

In its ruling from the bench, the circuit court addressed each and every one of the issues contained in Code § 20-124.3. In addressing "factor 8, the reasonable preferences of the child," the court stated, "I only have the testimony of Dr. Nelson, if those are accurate, the children prefer being with the father." However, Dr. Nelson's second report to the circuit court, dated July 11, 2010, indicated that *none* of the children have a preference for where they will live. Dr. Nelson also did not testify at trial to any particular preference on the part of the children and explained the children would simply like to have a final decision in the matter. The circuit court's finding that the children prefer to live with father is, thus, plainly wrong and without evidence to support it.

Nevertheless, the circuit court was simply required to consider each and every one of the factors contained in Code § 20-124.3. It was not required to give any particular weight to these factors or to quantify them in any way. And, since nothing in the record suggests that this factor was pivotal to the court's custody decision, any such error in the court's factual finding with respect to the children's preferences is harmless. See King v. Cooley, 274 Va. 374, 379, 650 S.E.2d 523, 526 (2007) ("Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the [result]."). With respect to factor 2, "the age and physical and mental condition of each parent," the circuit court opined, "mental condition also includes emotional. And based upon the evidence presented . . . the court finds that there are significant emotional problems that may exist with [mother], in that regard factor 2 militates in favor of the [father]." Mother suggests that the circuit court failed to properly consider this factor because it made no mention of father's history of psychiatric hospitalization, his suicidal ideations or his rage issues. While it is true that "custody and visitation proceedings require courts to consider the mental health of *the parties*," Schwartz v. Schwartz, 46 Va. App. 145, 153, 616 S.E.2d 59, 64 (2005) (emphasis added), father's history of psychiatric hospitalization, his suicidal ideations, and his anger management issues were presented to the circuit court, and there is no

evidence that the court did not consider them. The mere fact that the court did not mention the particularities of father's mental condition is of no moment. The circuit court expressly considered factor 2 as required and simply gave greater weight to mother's delicate emotional state, for which the record contained sufficient evidence, than it gave to father's mental health issues. The circuit court did not, therefore, abuse its discretion in its consideration of factors 2 and 8.

### 3. The Circuit Court's Findings as to the Intellectual Needs of the Children

Mother next alleges the circuit court erred in its findings on factor 3, each parent's "ability to accurately assess and meet the emotional, intellectual and physical needs of the child." Specifically, mother contends the circuit court's finding is "contrary to the decision of both parties" to place the children in the Waldorf School, and it violates mother's fundamental constitutional right to make decisions about raising her children. To begin with, mother did not make any constitutional objection to the court's ruling in the circuit court. For that reason, her constitutional objection is not properly preserved for appeal. See Rule 5A:18. With respect to the parties' decision to place the children in the Waldorf School during the parties' separation in 2007, father testified that he agreed to the children's placement in that school to increase the possibility of a reconciliation with mother. Father reported to Dr. Nelson that he and mother had actually discussed a wide range of educational options for the children and he objected to their attendance at the Waldorf School upon the parties' final separation. Indeed, the Waldorf School is admittedly unaccredited, it does not utilize any electronic equipment necessary to modern education such as computers, printers, television or video equipment, it does not utilize any textbooks (the children make their own textbooks), and it does not test or grade the children to provide valuable feedback on their learning accomplishments.

Dr. Nelson was very thorough in her discussion of the children's education in Japan. She explained that E.G. is having a difficult time catching up with the curriculum in Japan, given the fact that she missed an entire school year in 2007, but she is improving rapidly. Although E.G.

reported that she finds school in Japan to be very hard, she has many friends and is very social. E.X.G. is doing very well at school and appears to be thriving. Whereas he was out of control in his early years, he is now obedient and he appears to enjoy a level of popularity with his teachers and the other children. He is also very active in soccer and enjoys sharing that activity with his father. Additionally, although E.A.G. did not appear to understand Japanese at all upon his return, he has since begun to pick up the language and appears to be doing well in school. Although we acknowledge mother's concern that E.X.G. has exhibited declining skills in English since his return to Japan, we note the trial court considered this fact along with all the evidence in this case, including evidence that father hired tutors for all the children. The circuit court did not, therefore, abuse its discretion in weighing mother's concern against all of the other evidence that the children were thriving in Japan with father. There is some concern over bullying that the children have had to endure, but the authorities in Japan seem to be sensitive to the issue.

The circuit court's statement that the "feel-good Waldorf School curriculum really doesn't impress [the court] one bit," is not *per se* an unreasonable assessment of the Waldorf School, any more than its suggestion that American schools might benefit from the "very rigid educational program that obviously works" in Japan. The record contains a significant amount of factual information pertaining to the educational needs of the children and both parents' approach to meeting those needs. Although the court did not provide a comprehensive analysis supporting its decision, the fact is, the circuit court considered the parties' ability to accurately assess and meet the intellectual needs of the children as required by Code § 20-124.3(3) and its findings are not plainly wrong or without evidence to support them. We, thus, affirm the circuit court's findings on factor 3.

4. The Circuit Court's Failure to Consider the Past History of the Parents in Parenting

Finally, mother contends that the circuit court erred in its consideration of factor 5 "the role that each parent has played and will play in the future, in the upbringing and care of the child."

Mother also argues the circuit court erred in its consideration of factor 7, "the relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child."

In considering factor 5, the circuit court stated, "there's no question, Mrs. Gudino, that you have been a primary caregiver. And I'm not going to minimize the importance of that in the early development stages of a child and now we're talking about what role they will play in the future in the upbringing and care of the child." The court continued, "Mr. Gudino, based upon the evidence that has been presented, has demonstrated that he is concerned about the needs of the children and has acted in every way to ensure their needs are being met."

Again, although the court focused on mother's past role as the primary caretaker, the record contains evidence that father was always involved with the children. Father testified that he was a "birth partner" (mother wanted to have the babies born at home), he changed diapers, he fed the babies, he got up with the babies in the middle of the night, he did chores around the house, he got the children ready for school in the mornings and made them breakfast, he took the children to school, and he put them to bed. The record, thus, contains evidence of father's past involvement in the children's lives, and there is no evidence that the court did not consider it.

With respect to factor 7, Dr. Nelson's report suggests that since the children's return to Japan, father has minimized his own social activities in favor of spending time with the children. Father is responsible for getting the kids to school in the morning and for putting them to bed at night. Father participates in weekly soccer games with E.X.G., and he engages the children in regular weekend family activities. The children are noticeably better behaved, particularly in response to father's implementation of his "hankos" system of discipline in which the children earn reward points for good behavior. Because of the success of the hankos system, father does not have to yell and scream at the kids as he did in the past. E.G. testified that whereas she felt like she lived

with 18 screaming monkeys at her mother's house, at father's "we are just three screaming monkeys." Although the children struggle with the difficult Japanese school system, they appear to be thriving, they seem normal and well-adjusted, and they appear happy. The court's finding that father "has stepped up to the plate . . . [h]e has shown the initiative and has done just that," is not plainly wrong or without evidence to support it.

Because the circuit court appears to have properly considered factors 5 and 7, and because its findings are supported by the record, we must affirm the circuit court.

### B. The Circuit Court's Reappointment of Dr. Nelson as a Custody Evaluator and its Requirement that Mother Solely Bear the Entire Cost of an Independent Evaluator for the Children

Mother next maintains that the circuit court erred in reappointing Dr. Nelson as a custody evaluator for her appeal in the circuit court. She also alleges the circuit court erred in ordering her to pay the total cost of an independent evaluator. Mother contends the circuit court's rulings effectively denied her a trial *de novo* in the circuit court. Father responds that mother failed to preserve this assignment of error for appeal, since she failed to object to the circuit court's rulings with the required specificity when rendered. Father is correct; mother did not properly preserve this issue for appeal.

Rule 5A:18 provides that

> [n]o ruling of the trial court . . . will be considered as a basis for
> reversal unless an objection was stated with reasonable certainty at
> the time of the ruling, except for good cause shown or to enable the
> Court of Appeals to attain the ends of justice. A mere statement
> that the judgment or award is contrary to the law and the evidence
> is not sufficient to preserve the issue for appellate review.

"In order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986)). "A party must state the grounds for an objection 'so that the trial judge may understand the precise question

or questions he is called upon to decide.'" Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (quoting Jackson v. Chesapeake & Ohio Ry. Co., 179 Va. 642, 651, 20 S.E.2d 489, 492 (1942)). "To satisfy the rule, 'an objection must be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.'" Id. at 437, 689 S.E.2d at 724 (quoting Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002)).

Rule 5A:18 "'exists to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.'" Reid v. Boyle, 259 Va. 356, 372, 527 S.E.2d 137, 146 (2000) (quoting Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988)). "In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991). "If [the] opportunity [to address an issue] is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review or action by [the appellate court]." Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 526, 636 S.E.2d 416, 420 (2006). An appellate court can only "determine whether or not the rulings and judgment of the court below . . . were correct." Jackson, 179 Va. at 651, 20 S.E.2d at 493.

In this case, the parties appeared in the circuit court on February 18, 2010, on mother's "Emergency Motion to Extend Stay of Enforcement" of the juvenile and domestic relations district court's ("J&DR") custody order pending appeal. The guardian *ad litem* appeared and requested, over mother's objection, to be reappointed as guardian *ad litem* for the children during the pendency of the appeal. Mother objected to the reappointment of the guardian *ad litem*, alleging that the guardian *ad litem* was biased. During the discussion, mother also referred to Dr. Nelson's report. Mother suggested that Dr. Nelson's report gave considerable weight to some factors favorable to

- 12 -

father while ignoring other factors favorable to mother. However, the record fails to disclose any specific objection to the reappointment of Dr. Nelson as prohibiting mother's right to a trial *de novo*. At the conclusion of the hearing, after the circuit court reappointed the guardian *ad litem*, mother inquired, "what about Dr. Nelson, your Honor?" The circuit court replied, "I will reappoint Dr. Nelson. Do you want me to appoint another independent?" Mother said, "yes." After appointing an independent evaluator, the court stated, "the parties are bearing the expenses of the independent." After some further discussion, the circuit court stated "well, each party can pay for their own evaluator." Mother responded, "just for the record, Your Honor, we do object to Dr. Nelson and to the Guardian Ad Litem's report. The court responded, "that's noted in the record and it is preserved for any appellate purposes that may follow."

The circuit court's order, dated February 22, 2010, provided that mother is to pay the entire cost of the independent evaluator and father is to pay Dr. Nelson's fee. Although mother signed the order "seen and objected to as to the court's re-appointment of Dr. Michelle K. Nelson as a neutral evaluator in this case," mother's objection is not stated with any specificity. In context, it appears mother objected to Dr. Nelson's reappointment on the basis of Dr. Nelson's bias. However, mother's objection does not make any reference whatsoever to the court's requirement that mother pay the cost of an independent evaluator, and mother's objection does not mention the effect of the circuit court's ruling on mother's right to a *de novo* trial. The circuit court was, therefore, not apprised of the objections mother now raises, and it was afforded no opportunity to remedy the purported wrongs.

In sum, the circuit court was not properly notified of mother's specific reason for her objection to the reappointment of Dr. Nelson and she made no objection at all to the court's requirement that she pay for the independent evaluator. This issue is, therefore, not preserved for appeal.

C.  The Circuit Court's Imposition of Excessive Visitation Costs on Wife as Inequitable
Given the Parents' Vast Income Disparity

Mother next contends the circuit court erred in ordering her to pay a *pro rata* portion of the

children's travel expenses associated with their visitation schedule in the United States and in

ordering mother to pay the entire costs associated with mother's visitation in Japan.  Mother

maintains that given the vast disparity in the parties' respective incomes, father should be ordered to

pay the entire cost associated with mother's visitation with the children.

> The authority vested in a trial court to decide issues concerning
> the care, custody, support and maintenance of the minor children,
> the visitation rights of the non-custodial parent, and the extent to
> which those rights and responsibilities shall be apportioned
> between estranged parents is a matter of judicial discretion which
> courts must exercise with the welfare of the children as the
> paramount consideration.

Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986).  This Court will not

reverse such decisions absent "a clear abuse of discretion."  Congdon v. Congdon, 40 Va. App. 255,

262, 578 S.E.2d 833, 836-37 (2003) (citation omitted).  "An abuse of discretion can be found if the

trial court uses an improper legal standard in exercising its discretionary function, because a trial

court by definition abuses its discretion when it makes an error of law."  Id. (quotations omitted).

Mother suggests that she should not be required to pay any of the transportation costs

attendant to the children's visitation with her in the United States, nor should she have to pay the

entire cost associated with her visits to Japan, because of the vast discrepancy in the parties'

respective incomes.  However, the circuit court clearly considered that discrepancy in ordering that

mother and father pay only a *pro rata* portion of the necessary costs for the children's visitation

schedule in the United States.  Moreover, although father makes significantly more money annually

than mother, the record shows that he lives in Tokyo, "one of the most expensive cities in the

world," where he paid one million dollars for a 1,600 square foot house and where he is primarily

responsible for the upbringing of the parties' three children.  Also, because matters pertaining to

mother's entitlement to spousal support and equitable distribution were not yet decided when the circuit court rendered its decision, it is unclear from this record whether mother will, in fact, be able to pay her own way in Japan should she decide to visit with the children there. Mother works full time and lives at home with her father. She also incurred legal fees in an amount exceeding $150,000, and she paid an expert witness $8,000 merely to read Dr. Nelson's report and testify at trial. Mother's assertion that she is unable to pay her own way in Japan is, therefore, entirely speculative and not supported by the record. It was within the discretion of the circuit court to decide issues pertaining to visitation and the costs attendant thereto and, contrary to mother's suggestion on brief, there is no evidence the circuit court was attempting to penalize mother in any way.

Simply put, the circuit court did not abuse its discretion in requiring mother to pay a *pro rata* portion of the costs attendant to her visitation with the children in the United States and in ordering mother to pay the whole cost associated with her visits to Japan. We, therefore, affirm the circuit court on this issue as well.

### D. The Circuit Court's Appointment of the Guardian *Ad Litem*

Mother also alleges the circuit court erred in reappointing Louise Moore as guardian *ad litem* for the children during the pendency of mother's appeal. Specifically, mother contends the circuit court appointed Moore without first rendering specific findings in accordance with Code § 16.1-266(F).[3] According to mother, Moore's appointment was, therefore, "unlawful." Mother

---

[3] Code § 16.1-266(F) provided in pertinent part:

> in cases where the custody of a child or children is the subject of controversy or requires determination and each of the parents . . . claiming a right to custody is represented by counsel, the court shall not appoint . . . a guardian *ad litem* to represent the interests of the . . . children unless the court finds, at any stage in the proceedings in a specific case, that the interests of the child or children are not otherwise adequately represented.

appears to concede that she failed to preserve this issue for appeal and suggests that this Court can

address the assignment of error under the ends of justice exception to Rule 5A:18.

As previously stated,

> [n]o ruling of the trial court . . . will be considered as a basis for
> reversal unless an objection was stated with reasonable certainty at
> the time of the ruling, except for good cause shown or to enable the
> Court of Appeals to attain the ends of justice. A mere statement
> that the judgment or award is contrary to the law and the evidence
> is not sufficient to preserve the issue for appellate review.

Rule 5A:18.

In this case, mother clearly objected to the reappointment of the guardian *ad litem* on the

basis that she was biased. Indeed, at the February 18, 2010 hearing mother explained to the circuit

court that she had filed a motion in the J&DR court to disqualify Moore as the guardian *ad litem*

because of Moore's "biased opinion in this case." However, mother had withdrawn the motion

because she "did not have the money to move forward with that issue, and her motion is just being

made now." Because mother did not have any documentary or other evidentiary support for her

contention that Moore was biased, the circuit court ruled that until it heard some evidence as to

Moore's bias or prejudice, it was going to reappoint Moore.

On appeal, mother appears to abandon her argument that Moore was biased, and instead

argues alternatively that the circuit court failed to make threshold statutory findings before

reappointing her, as required by Code § 16.1-266. However, at no point in time did mother ever

mention Code § 16.1-266 to the circuit court or suggest the circuit court was required to make initial

findings pertaining to the appointment of a guardian *ad litem* for the children. She has, thus, failed

to preserve this assignment of error for our review.

Appearing to acknowledge her failure to preserve the issue, mother suggests this Court can

consider the matter under the ends of justice exception to Rule 5A:18. However, "the ends of

justice exception is narrow and is to be used sparingly." Brown v. Commonwealth, 8 Va. App. 126,

132, 380 S.E.2d 8, 11 (1989). "Application of the ends of justice exception requires proof of an error that was clear, substantial and material." Andrews v. Creacey, 56 Va. App. 606, 636, 696 S.E.2d 218, 232 (2010) (citation omitted). That is, "[t]he record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Id. (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)). While "some procedures are so crucial that a court's failure to adhere to them constitutes error that is clear, substantial and material even in the absence of affirmative proof of error in the result," Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 927 (2000), such is not the case here. The circuit court appointed the guardian *ad litem* as requested, and the guardian *ad litem* performed the duties required of her. Mother cannot now complain on appeal of error in the circuit court where she herself failed to follow through with her motion to exclude the guardian *ad litem* and where she failed to properly notify the court of the statutory requirements for the appointment. This issue is waived.

### E. The Circuit Court's Requirement that Mother Pay One-Half of the Guardian *Ad Litem*'s Fee

Lastly, mother contends the circuit court erred in ordering her to pay one-half of the guardian *ad litem*'s fee in this case.

There is no dispute that "in those contested custody cases where the trial judge finds that the best interests of the child are not adequately protected by the parties, appointment of a guardian *ad litem* for the child is appropriate." Verrocchio v. Verrocchio, 16 Va. App. 314, 322, 429 S.E.2d 482, 487 (1993). "Indivisible from the power of appointment is the associated power equitably to apportion the fees and expenses of the guardian *ad litem* as costs to the parties." Id. Indeed, "Code §§ 20-79(b) and 20-99(5) provide the statutory basis for the award of such costs as equity and justice may require. Such an award is considered remedial and is within the recognized 'discretion

of a court of equity over the subject of costs.' Code § 14.1-177 [recodified at Code § 17.1-600]."

Id.

Here, mother contends she should not be required to pay any of the costs associated with the guardian *ad litem* appointed by the court to oversee the best interests of the children. Mother suggests that because husband makes substantially more money per year than she does, he should pay the entire fee. However, as previously stated, father lives in one of the most expensive cities in the world and he has primary physical custody of the children. Wife has at least two professional certifications and works full time. She also lives at home with her father. Both parties have incurred substantial attorneys' fees and costs associated with this litigation, and mother exhibited an ability to pay her own expert witness fee in the amount of $8,000. Thus, while mother clearly makes less money than father, the record shows that mother has the ability to pay one-half the cost of the guardian *ad litem*'s fee, notwithstanding the resulting hardship and sacrifice associated with it. The circuit court did not, thus, abuse its discretion in ordering mother to pay one-half of the guardian *ad litem*'s fee.

## II. Conclusion

For the foregoing reasons, we conclude that the circuit court did not abuse its discretion in awarding primary physical custody of the parties' three children to father, in reappointing Dr. Nelson as the custody evaluator and Ms. Moore as the guardian *ad litem*, or in ordering mother

to pay one-half of the guardian *ad litem*'s fee, the entire cost of an independent evaluator, and the

costs associated with her visitation with the children.  We, thus, affirm the circuit court.[4]

Affirmed.

---

[4] Father requests his attorney's fees on appeal.

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear.  The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  Upon
consideration of the record, we conclude "the litigation addressed appropriate and substantial
issues" and that [mother] did not generate[] unnecessary delay or expense in pursuit of [her]
interests."  Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).  Thus,
we deny father's request for an award of appellate attorney's fees and costs.