COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Felton and Kelsey
Argued at Richmond, Virginia


JOHN RHODES CONGDON, JR.
                                          OPINION BY
v.    Record No. 0522-02-2          JUDGE D. ARTHUR KELSEY
                                        APRIL 8, 2003
MARY EVELYN DAVIS CONGDON


          FROM THE CIRCUIT COURT OF HENRICO COUNTY
             Lawrence D. Diehl, Judge Pro Tempore

         Donald K. Butler (Mary Beth Joachim; Morano,
         Colan, Cook & Butler, on briefs), for
         appellant.

         Terrence R. Batzli (Charles E. Powers;
         Barnes & Batzli, on brief), for appellee.


     In this divorce case, John Rhodes Congdon claims the trial

court erred by awarding his wife spousal support despite her

admitted adultery during the marriage.  The trial judge, the

husband argues, misapplied the manifest injustice exception to

Code § 20-107.1(B)'s statutory bar against awarding support to

adulterers.  In addition to defending her award of support, Mary

Evelyn Davis Congdon claims that the trial court erred in its

equitable distribution calculation of the marital share of the

appreciation of her husband's separately owned stock in the family

trucking business.

     We agree with the husband that the trial judge misread our

precedents on the manifest injustice exception, but we nonetheless

affirm because his factual findings support the result reached under a proper interpretation of the law.  As to the equitable distribution calculation of stock appreciation, we disagree with the wife and find no reversible error in the trial court's method of classifying the increase in stock value.

I.

When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.  Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002); Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995).  That principle requires us to "'discard the evidence'" of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial.  Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).  We view the facts of this case, therefore, through this evidentiary prism.

Mary Evelyn Davis (known as Lynn) and John Rhodes Congdon married in 1977.  During their twenty-two year marriage, the couple had three children.  John filed for divorce in 1999 alleging adultery, and Lynn filed a cross-bill asserting cruelty

and constructive desertion.  The parties agreed to the appointment

of a judge pro tempore to decide the case.[1]

In addition to receiving depositions, the trial judge heard

testimony ore tenus from multiple witnesses over four days.  Much

of the testimony described the nature of the marriage and the

circumstances that led to its dissolution.  At the beginning of

the trial, Lynn conceded that she was guilty of adultery and did

not contest John's request for a final divorce on this ground.

The evidence showed that she engaged in an extramarital affair for

at least five years during the marriage.

Viewed in the light most favorable to Lynn, however, the

evidence also portrayed John as a profane and verbally abusive

man.  John frequented "strip joints and topless bars" and told

Lynn about, among other things, the "oil wrestlers" that performed

at these places.  He would indiscriminately engage in these

conversations in the presence of his children and Lynn's family,

at times even "boasting or bragging about those places."  "It was

not an infrequent topic of conversation."  John went to these

places, he explained to one witness, "because they have the best

p----."  John "frequently talked crudely about sexual type

---

[1] Under Code § 17.1-110, a judge pro tempore is "vested with the same power and authority and shall be charged with the same duties as to the cause in and as to which he is appointed as though he were the regularly elected and qualified judge of such court."

things."  He carried on with this practice "[p]retty much the same the whole 20 years."

John also directed his profanity toward his children.  In one instance, John's son Michael had accidentally kicked his father's head while both were lying on a bed watching television.  Though realizing it was simply an accident, John "started yelling . . . God damn you, Michael.  Why in the f--- did you kick me in the face. . . .  Why did you f---ing have to kick me in the face?"  In response, Michael ran out of the house.  On another occasion, John was having a "food fight" with his twelve-year-old daughter when John accidentally got hit in the eye.  He "started screaming . . . God damn you.  God damn, you hit me in the eye."  His daughter "just sat there and started crying," not at all understanding her father's outburst.  Other times John would come home from work angry and declare, in ear-shot of his children, that "one of the girls at the office" was a "bitch or a c---."  His use of vulgarity, in the presence of his family and others, "was quite frequent."

Several witnesses who knew John and Lynn over the years testified that they had never once seen John show any affection or any kindness toward Lynn.  Over the course of the marriage, John chronically complained (both to Lynn and others) about Lynn's weight, appearance, housekeeping, and spending habits.  John referred to Lynn as "Witch."  He was a "heavy drinker," sometimes starting as early as "10:00 in the morning."  Because John

- 4 -

maintained strict control over the financial accounts, Lynn was not "privy to the family finances at any time during the marriage." John particularly disliked Lynn's family and threatened on one occasion to move her out of town if she did not "stop speaking with her parents."

Despite these problems, John and Lynn enjoyed considerable financial security. John has a college degree, a stable and long-term career in a family trucking business, an annual salary exceeding $250,000, and additional income from corporate dividends and family related gifts. John's interests in stocks, real estate, and tangible assets exceeded $6 million. In contrast, Lynn has not held a full time job since the early years of her marriage, choosing instead to stay at home to raise their three children. She has no college degree, giving her a future earning capacity far below her husband's. At the time of trial, Lynn was earning $10.00 an hour as a receptionist.

The trial court also heard evidence that John's stock in his family business increased in value over the course of the marriage. Conceding that John acquired the shares as a gift from his family and thus should be considered separate property, Lynn argued that under Code § 20-107.3(A)(3)(a) the appreciation portion of the stock's present value should be treated as marital property. In reply, John presented extensive testimony on the internal management of the business and the role of six other key employees in the company's success.

After the close of the evidence, the trial court issued a comprehensive letter opinion detailing each aspect of the court's rulings on divorce grounds, equitable distribution, and spousal support. On the first issue on appeal, the adultery bar against spousal support, the court invoked the "manifest injustice" exception in Code § 20-107.1(B). After considering the additional factors in Code § 20-107.1(E), the court awarded support of $2,300 per month to Lynn to continue until her death or remarriage. On the second issue on appeal, the classification (marital or separate property) of the stock appreciation, the court found that 90% of the increase in value should be deemed separate property given the extensive efforts of other key employees and the extent of "passive growth" in the stock value.

## II.

Under Code § 8.01-680, a factual determination cannot be reversed on appeal unless "plainly wrong or without evidence to support it." See Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992); Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002). This standard applies to a "trial court's decision to award spousal support to a party despite his or her adultery" as it does to any other domestic relations case. Rahbaran v. Rahbaran, 26 Va. App. 195, 212, 494 S.E.2d 135, 143 (1997) (citing Williams v. Williams, 14 Va. App. 217, 219, 415 S.E.2d 252, 253 (1992)).

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (quoting Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998)). On appeal, a trial court's decision on this subject will not be reversed "unless there has been a clear abuse of discretion." Id. (quoting Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997)); see also Gottlieb v. Gottlieb, 19 Va. App. 77, 84, 448 S.E.2d 666, 671 (1994).

An abuse of discretion can be found if the trial court uses "an improper legal standard in exercising its discretionary function," Thomas v. Commonwealth, 263 Va. 216, 233, 559 S.E.2d 652, 661 (2002), because a trial court "'by definition abuses its discretion when it makes an error of law,'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). See also Mughrabi v. Commonwealth, 38 Va. App. 538, 545, 567 S.E.2d 542, 545 (2002). An abuse of discretion also exists if the trial court fails to consider the statutory factors required to be part of the decisionmaking process, Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997), or makes factual findings that are plainly wrong or without evidence to support them, Northcutt, 39 Va. App. at 196, 571 S.E.2d at 914.

III.

A.

John challenges the trial court's award of spousal support to his wife. Code § 20-107.1(B) bars an award of support to any spouse found guilty of adultery, John argues, except in narrow circumstances not present in this case. John disagrees with the trial court's interpretation of Code § 20-107.1(B), as well as its factual findings in support of applying the statutory exception. We agree with John that the trial court restated the § 20-107.1(B) standard incorrectly, but conclude that the trial court's factual findings support its decision in any event.

With respect to spousal support, Code § 20-107.1(B) provides that "no permanent maintenance and support shall be awarded from a spouse if there exists in such spouse's favor a ground of divorce under the provisions of subdivision (1) of § 20-91," which includes adultery. This statute bar, however, is subject to a narrow exception:

> However, the court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

Code § 20-107.1(B). The language of this statute circumscribes the scope of the exception in three ways.

- 8 -

First, the evidence must rise to the level of "clear and convincing" proof. A more stringent standard than preponderance of the evidence, "clear and convincing" proof requires "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Lanning v. Va. Dept. of Transp., 37 Va. App. 701, 707, 561 S.E.2d 33, 36 (2002) (citations omitted). "It is intermediate, being more than a mere preponderance," but less than the criminal "reasonable doubt" standard. Gifford v. Dennis, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985) (citation omitted).

Second, the exception applies only in cases of "manifest injustice." The expression, often found outside of domestic relations law, has been used synonymously with the phrase "miscarriage of justice." Harris v. DiMattina, 250 Va. 306, 318, 462 S.E.2d 338, 343 (1995) (interpreting the duty imposed by Code § 8.01-1 on trial courts to prevent unjust results in the application of a new provision of law). The "manifest injustice" expression also serves as shorthand for the narrow exception to Rule 5A:18's contemporaneous objection requirement. M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002). The legislature has put the expression to use limiting the ability of a criminal defendant to withdraw a guilty plea after judgment. See Code § 19.2-296 (after

judgment, a guilty plea may be withdrawn only "to correct manifest injustice").

Third, the statute limits the fact finder's discretion to two specific variables: (i) the relative degrees of fault and (ii) the economic disparities between the parties. The statute requires the decision to be "based upon" these factors. Code § 20-107.1(B). This language implies a higher level of justification than a statutory command that merely requires the trial judge to consider this or that factor.

In this case, the dispute focuses on whether the trial court must base its decision on both variables or may rest it exclusively on only one. John argued before the trial court that under Code § 20-107.1(B) a trial court "must consider and weigh both prongs of the test for manifest injustice." (emphasis in original). The trial court disagreed, concluding that under Calvin v. Calvin, 31 Va. App. 181, 186, 522 S.E.2d 376, 378 (1999), "it can be argued that only a finding of a manifest injustice as to either prong is sufficient to overcome the bar to support."

The trial judge erred in reading our precedent to permit a purely disjunctive test, one in which the manifest injustice conclusion could be based on either the relative degrees of fault or the economic disparities of the parties. "In order to find that denial of support will constitute a manifest injustice, the court must base that finding on the parties'

- 10 -

comparative economic circumstances <u>and</u> the respective degrees of

fault." <u>Barnes v. Barnes</u>, 16 Va. App. 98, 101-03, 428 S.E.2d

294, 298 (1993) (emphasis in original). We italicized the word

"and" in <u>Barnes</u> precisely because the statute makes clear that

the decision must be rooted in both factors.[2]

We disagree with the trial court's view that <u>Calvin</u>

effectively retooled Code § 20-107.1(B) into a disjunctive test.

In <u>Calvin</u>, we noted only that the "respective degrees of fault"

in that case weighed "heavily" in favor of the husband because

of the wife's adultery and, thus, any manifest injustice

resulting from a denial of spousal support "must derive from the

relative economic circumstances of the parties." <u>Calvin</u>, 31

Va. App. at 186, 522 S.E.2d at 378. We made that observation

based upon the facts in the appellate record and the specific

argument presented to us on appeal. The appellee in <u>Calvin</u> did

not file a brief on appeal or participate in oral argument. <u>Id.</u>

at 182 n.1, 522 S.E.2d at 376 n.1. <u>Calvin</u> did not expressly

mention, much less analyze, whether Code § 20-107.1(B) requires

---

[2] In <u>Barnes</u>, 16 Va. App. at 103, 428 S.E.2d at 298, for
example, we noted that the marriage disintegrated because of the
"<u>mutual</u> inattention and fault of both parties." The wife's
post-separation adultery occurred long after the marriage had
been "irretrievably lost." <u>Id.</u> As a result, we held that the
"trial judge did not disregard the parties' respective degrees
of fault during the marriage and base her finding of manifest
injustice solely upon the parties' disproportionate economic
circumstances." <u>Id.</u> at 102, 428 S.E.2d at 298.

a conjunctive or a disjunctive test. To be sure, Calvin cited Barnes without noting any conflict between the two decisions.

Under Virginia law, a decision of one panel "becomes a predicate for application of the doctrine of stare decisis" and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court. Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996). This principle applies not merely to the literal holding of the case, but also to its ratio decidendi — the essential rationale in the case that determines the judgment. Absent a clear indication to the contrary, therefore, we must presume that the panel deciding Calvin did not intend to undermine Barnes.

Despite the trial court's mistaken restatement of the legal standard, the court made alternative factual findings on both prongs of Code § 20-107.1(B). On the "respective degrees of fault" factor, the trial court correctly observed that in this context fault "encompasses all behavior that affected the marital relationship, including any acts or conditions which contributed to the marriage's failure, success, or well-being." See Barnes, 16 Va. App. at 102, 428 S.E.2d at 298. Using this definition, the trial court rejected the contention that Lynn's adultery rendered the balance of wrongdoing "completely one-sided." Though the trial court did not enumerate the various aspects of fault attributable to John, Code § 20-107.1(B) does not require that this enumeration be done.

- 12 -

What § 20-107.1(B) does require, the trial judge did.  He weighed the respective degrees of fault by considering the essential question of culpability for the marriage's demise.

The ultimate issue remains, then, whether clear and convincing evidence of John's and Lynn's respective degrees of marital fault —— coupled with an examination of the economic disparities between them —— supports a finding of manifest injustice.  This issue resolves itself under our appellate review standard.  Under this standard, if "the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court."  Calvin, 31 Va. App. at 183, 522 S.E.2d at 377 (quoting Ferguson v. Stafford County Dep't of Social Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992)).

On the "respective degrees of fault" issue, the evidence before the trial judge pits Lynn's admitted adultery against John's twenty-year showing of base and profane behavior, not only with his wife, but with his children and his extended family.  We believe a reasonable jurist could put John's "fault" in a league apart from the type of mere incivility or petulance of manners ordinarily alleged, and often proved, in nearly every contested divorce case.  We thus dismiss as exaggerated John's argument that sustaining the trial court's finding on these facts would effectively write the "respective degrees of fault" factor out of Code § 20-107.1(B).  Nor do we believe, as John

- 13 -

contends, that the trial court's finding essentially declares that John's behavior "amounted to a justification for adultery." The law does not excuse, condone, or justify Lynn's infidelity. But neither does the law turn a blind eye to John's behavior, which multiple witnesses described as both unrestrained and longstanding.

On the second factor, the "relative economic circumstances of the parties," Code § 20-107.1(B), the trial court found "extreme disparities in their relative economic situations, both in terms of earning capacity, current incomes and other economic assets and resources." Ample evidence supports this finding. John has a secure job with a family company paying over $250,000 a year plus corporate dividends and family related gifts. John's interests in stocks, real estate, and tangible assets exceeds $6 million. On the other hand, Lynn has no separate assets of any significance and holds down a $10.00-an-hour job as a receptionist.

For these reasons, the trial court was not plainly wrong in finding, by clear and convincing evidence, that denying spousal support under Code § 20-107.1(B) would constitute a "manifest injustice" based upon the respective degrees of fault attributable to John and Lynn as well as their disparate financial circumstances. Because credible evidence supports that conclusion, we affirm the trial court on this issue.

Lynn contends that the trial court erred by not classifying as marital the full appreciation in John's stock in his family's trucking company that occurred during the marriage.  The court divided the appreciation component of the stock value into 90% separate and 10% marital.  We find no error in the trial court's factual findings on this matter.

Separate property that increases in value during the marriage "shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property."  Code § 20-107.3(A)(3)(a).  Separate property that has appreciated in value due to forces other than either party's efforts, such as passive appreciation or the personal efforts of others, remains separate property.  See Martin v. Martin, 27 Va. App. 745, 750, 501 S.E.2d 450, 452 (1998) (en banc).  In addition,

> the nonowning spouse shall bear the burden
> of proving that (i) contributions of marital
> property or personal effort were made and
> (ii) the separate property increased in
> value.  Once this burden of proof is met,
> the owning spouse shall bear the burden of
> proving that the increase in value or some
> portion thereof was not caused by
> contributions of marital property or
> personal effort.

Code § 20-107.3(A)(3)(a); see Gilman v. Gilman, 32 Va. App. 104, 120, 526 S.E.2d 763, 771 (2000). Slight efforts are not enough; the nonowning spouse must prove that personal efforts "were significant and resulted in substantial appreciation of separate property." Bchara v. Bchara, 38 Va. App. 302, 314, 563 S.E.2d 398, 404 (2002).

In this case, credible evidence supports the trial court's determination that John's stock appreciated greatly because of passive growth and the efforts of others. The court examined in detail the "extent that Mr. Congdon's efforts were an active part of the company's overall growth." Taking into account that John's father, brother, and other key officers played more active managerial roles in the family business, the trial court found John's efforts contributed to only 10% of the stock appreciation. See Rowe v. Rowe, 24 Va. App. 123, 133-34, 480 S.E.2d 760, 764-65 (1997) (recognizing that brother's efforts and growth in surrounding areas undermined the significance of husband's contributions to the stock's increase in value); Decker v. Decker, 17 Va. App. 12, 17-18, 435 S.E.2d 407, 411-12 (1993) (finding that husband's value to company illustrated his "substantial contribution" to the stock's increase in value). Lynn has not shown this factual finding to be plainly erroneous or without evidence to support it.

IV.

The trial court did not err in awarding spousal support under the "manifest injustice" exception to the adultery bar of Code § 20-107.1(B).  Despite articulating the legal standard incorrectly, the court's factual findings show that it applied both factors in reaching its decision.  We thus reject John's challenge to the support award.

We also affirm the trial court's decision to classify 90% of the stock appreciation as separate property.  The court applied Code § 20-107.3(A) properly and rested its conclusion on a satisfactory factual basis.

<u>Affirmed</u>.