COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Frank and Clements


ARTHUR LESLIE PORTER

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2907-03-3                              PER CURIAM
                                                         JULY 13, 2004
FLOSSIE LOUISE MAPLES PORTER


             FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                       Charles B. Flannagan, II, Judge

            (Robert M. Galumbeck; Mary Lynn Tate; Galumbeck, Necessary,
            Dennis & Kegley; The Tate Law Firm, on brief), for appellant.

            (Julia L. McAfee; Carl E. McAfee; McAfee Law Firm, P.C., on
            brief), for appellee.


       On appeal, Arthur Leslie Porter (husband) contends the trial court misapplied the manifest

injustice test contained in Code § 20-107.1 when it awarded Flossie Louise Maples Porter (wife)

spousal support.  Specifically, husband argues that wife failed "to prove by clear and convincing

evidence that it was the actions of Husband which were the more culpable in bringing about the

marriage's demise."  Because wife failed to prevail on the respective degrees of fault prong,

husband asserts the trial court erred in awarding spousal support.  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The parties married in 1989 and had no children during their marriage. On June 27, 2001, husband filed a bill of complaint seeking a divorce *a mensa et thoro* on the grounds of cruelty and/or constructive desertion.

Wife filed an answer denying husband's allegations of cruelty and constructive desertion and, by cross-bill, asked the trial court to grant her a divorce *a vinculo matrimonii* on the ground of constructive desertion. In the alternative, wife moved that a divorce be granted on the ground the parties had lived separate and apart for the statutory period.

By order entered April 7, 2003, the trial court granted husband's motion to amend his bill of complaint to further seek a divorce *a vinculo matrimonii* alleging that wife has committed and is committing adultery. The trial court also granted wife's motion to amend her cross-bill to include an additional ground for divorce, namely, adultery committed by husband.

The trial court conducted evidentiary hearings on July 14, 2003, and August 1, 2003, and it heard closing arguments on September 30, 2003.

Wife testified that on February 8, 2000, husband told her, "'I want to be alone.'" On February 20, 2000, husband gave wife a proposed separation agreement to sign, but she refused to sign it. Wife recalled that husband became distant and began going out at night. He "[n]ever said where he was going, [and] never said when he'd be home." Each time wife asked husband if he still wanted to live alone, he reiterated that he did. Early in 2001, husband gave wife a document entitled "Separation and Property Settlement Agreement." Husband had signed it before a notary public on February 1, 2001, and asked wife to sign. Wife refused to sign this agreement also. The parties separated, and husband filed for divorce in June 2001. Wife admitted having sexual relations with Jack Cole in August 2002, fourteen months after she and husband separated.

Jack Cole corroborated wife's testimony that he and wife had sexual intercourse in the summer of 2002 after she separated from husband and moved out of the marital home.

Husband testified that he began worrying about his business, his income and his health in the late 1990's, so he sought to make plans to address those concerns. In the fall of 1999, he visited an attorney for the purpose of having a "marital agreement" prepared. Husband prepared and submitted to the attorney an outline of what he wanted the document to include, namely, a listing and division of personal and real property and provisions for alimony and divorce expenses. The attorney prepared the document, entitled, "Marital Agreement," and gave a copy to husband "early [in] 2000." The document recited that "the parties desire to define their financial rights and obligations" regarding husband's companies. Husband provided a copy to wife in February 2000. Husband admitted telling wife at that time that he felt like he could live alone. Husband explained that he feared wife would not be supportive and helpful when things "g[o]t tough financially." Throughout 2000, wife continued to ask husband if he still felt like he could live alone, and each time, husband replied, "'Yes, Flossie. I can live alone.'" Following husband's insistence that he could live alone, wife "told [some] people that we were separated and was [sic] moving out." After learning of wife's comments, husband testified that in September 2000, he told wife, "'Well, Flossie, I guess it's over.'" Husband visited an attorney in October or November 2000 and had him prepare a separation and property settlement agreement. Husband admitted executing the agreement on February 5, 2001, and giving it to wife to sign. The third paragraph reads as follows:

> WHEREAS, as a result of the unfortunate domestic difficulties, the parties are, on the date of the execution of this agreement, commencing to live separate and apart, with the intent to live permanently separate and apart[.]

Wife never signed the agreement.

Following the September 30, 2003 closing arguments, the trial court directed each party to submit "a proposed final order that grants your client all the relief that you're asking for. In other words, as though the [trial court] has ruled in your favor on every point."

In its October 15, 2003 final decree, the trial court "adjudged, ordered and decreed that the [wife] be awarded a final divorce from [husband] on the grounds that the parties have lived separate and apart without cohabitation" for more than one year. In the section entitled "Spousal Support and Maintenance," the trial court ruled as follows:

> After consideration of the evidence and arguments presented, including the relative economic circumstances of the parties and their respective degrees of fault leading to the dissolution of this marriage, the Court finds that a denial of spousal support and maintenance to [wife] would constitute a manifest injustice in this case, and it is hereby adjudged, ordered and decreed, that [husband] shall pay to the [wife] the sum of Two Thousand Dollars on the 1st day . . . each and every calendar month

### THE SPOUSAL SUPPORT EXCEPTION

"Under Code § 8.01-680, a factual determination cannot be reversed on appeal unless 'plainly wrong or without evidence to support it.' This standard applies to a 'trial court's decision to award spousal support to a party despite his or her adultery' as it does to any other domestic relations case." Congdon v. Congdon, 40 Va. App. 255, 261, 578 S.E.2d 833, 836 (2003) (citations omitted).

Code § 20-107.1(B) provides that "no permanent maintenance and support shall be awarded from a spouse if there exits in such spouse's favor a ground of divorce under the provisions of subdivision (1) of § 20-91," which provisions include adultery. In determining whether a party is eligible for spousal support, "the court must determine whether either of the parties is barred from receiving support due to the existence of a marital fault amounting to a statutory ground for divorce." Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66

- 4 -

(1983). But, even where such a marital fault exists, the statute provides a narrow exception that reads:

> The court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

Code § 20-107.1(B).

"'In order to find that denial of support will constitute a manifest injustice, the court must base that finding on the parties' comparative economic circumstances *and* the respective degrees of fault.'" Congdon, 40 Va. App. at 264, 578 S.E.2d at 838 (quoting Barnes v. Barnes, 16 Va. App. 98, 102, 428 S.E.2d 294, 298 (1993)).

> The ultimate issue remains, then, whether clear and convincing evidence of [the parties'] respective degrees of marital fault — coupled with an examination of the economic disparities between them — supports a finding of manifest injustice. This issue resolves itself under our appellate review standard. Under this standard, if "the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court."

Id. at 266, 578 S.E.2d at 838 (quoting Calvin v. Calvin, 31 Va. App. 181, 183, 522 S.E.2d 376, 377 (1999)).

> "[R]espective degrees of fault during the marriage" are not limited to legal grounds for divorce. . . . "[F]ault during the marriage" encompasses all behavior that affected the marital relationship, including any acts or conditions which contributed to the marriage's failure, success, or well-being. *The "respective degrees of fault" are, however, but one of the two considerations the court must take into account in determining whether a denial of support constitutes a manifest injustice. Even though one party may have been the major force in creating the "fault during the marriage" which led to its dissolution and the other spouse may have been relatively blameless, those conditions constitute but one of the factors the court must weigh. The court must also weigh and consider the parties' relative economic positions in deciding*

- 5 -

> *whether it would be manifestly unjust to deny a spousal support award.*

Barnes, 16 Va. App. at 102, 428 S.E.2d at 298 (emphasis added).

## ANALYSIS

Husband argues that wife failed to prove "by clear and convincing evidence the second prong of the manifest injustice test dealing with the relative degrees of fault of the parties." However, husband's argument is based on an incorrect interpretation of the manner in which Code § 20-107.1 is to be applied. In Congdon, we explained that the trial court must determine "whether clear and convincing evidence of [the parties'] respective degrees of marital fault — *coupled with an examination of the economic disparities between them* — supports a finding of manifest injustice." Congdon, 40 Va. App. at 266, 578 S.E.2d at 838 (emphasis added). Therefore, a party obtaining spousal support need not prevail independently on *each* prong by clear and convincing evidence. In Barnes, we noted that "one party may have been the major force in creating the 'fault during the marriage' which led to its dissolution and the other spouse may be relatively blameless," yet the trial court may find clear and convincing evidence that a denial of support would constitute a manifest injustice after also weighing and considering "the parties' relative economic positions." Barnes, 16 Va. App. at 102, 428 S.E.2d at 298. Because wife was not required to present clear and convincing evidence to prevail on each prong independently, we look to "whether clear and convincing evidence of [the parties'] respective degrees of marital fault — coupled with an examination of the economic disparities between them — supports a finding of manifest injustice." Congdon, 40 Va. App. at 266, 578 S.E.2d at 838.

The record demonstrates that wife's adultery "occurred after the parties were separated." Barnes, 16 Va. App. at 102, 428 S.E.2d at 298 (noting that adultery occurring long after marriage had been "irretrievably lost" did not cause dissolution). On the other hand, the evidence proved

- 6 -

that husband became concerned about finances in the late 1990's, and on February 8, 2000, he told wife he could live alone. Late in 1999, husband began to visit attorneys and have them prepare legal documents to define and limit wife's claims to his business interests and certain other assets. Husband continued to tell wife he wanted to live alone, and in February 2001, husband presented wife with a property settlement agreement in contemplation of divorce. The trial court's belief that wife was not more culpable than husband in dissolving the marriage is evident in its refusal to grant husband the divorce based on fault grounds.

As to the economic factor of the equation, the wife's earning capacity and her assets were substantially less than those of husband. Husband had significant assets, including a fifty-five percent interest in Tri-Tube, Inc., a business he owned prior to the marriage. Husband's share of Tri-Tube was valued at trial at $375,152. Prior to the marriage, wife was a clerk at K-Mart, and she had little or no assets to bring into the marriage.

The record contains sufficient credible evidence to show that the trial court properly considered and weighed "the respective degrees of fault during the marriage" as well as the parties' relative economic situations in finding by clear and convincing evidence that a denial of spousal support would be manifestly unjust under these circumstances. Accordingly, the record fails to show that the trial court improperly applied the spousal support exception or erred in its consideration of the parties' respective degrees of fault during the marriage. Moreover, the record supports the trial judge's findings of clear and convincing evidence.

In summary, we affirm the judgment of the trial court. Further, upon review of the record, we do not find an award of attorney fees, in connection with this appeal as requested by wife, to be appropriate. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Affirmed.