COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia

UNPUBLISHED

KIMBERLY N. WILLOUGHBY

v.        Record No. 1619-17-2

ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPRHEYS
AUGUST 28, 2018

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Holly R. Vradenburgh; Lunsford & Vradenburgh, LLC, on brief),
for appellant.  Appellant submitting on brief.

Amanda E. B. Farley, Senior Assistant County Attorney
(B. Stephanie Commander, Guardian *ad litem* for the minor children;
Albemarle County Attorney's Office, on brief), for appellee.


Kimberly Willoughby ("Willoughby") appeals an order of the Circuit Court of Albemarle

County ("circuit court") terminating her parental rights of her four minor children.  Specifically,

Willoughby argues that "[t]he trial court erred as a matter of law by referencing information

regarding the appellant's experience with the criminal justice system collected from a previous,

unrelated hearing in the announcement of its judgment."  And that "[t]he trial court erred by not

finding that the appellant was afforded a reasonable amount of time under Virginia Code

§ 16.1-283(B)(2) to correct the conditions in which the neglect occurred before terminating her

residual parental rights."

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)). So viewed, the evidence is as follows.

Willoughby's four minor children, H.N., J.W., D.W., and S.B., were removed from her home by the Albemarle County Department of Social Services ("DSS") in early 2016 following a finding by the Albemarle County Juvenile & Domestic Relations District Court ("JDR court") that the children were being abused and neglected. Two months after the removal, a dispositional hearing was held, and a foster care service plan was entered, with a goal of "return to own home." Meanwhile, the children remained in foster care with weekly supervised visits. Another hearing four months later reiterated the goal of return to own home, with the children still in foster care. DSS recommended services for Willoughby including individual therapy, a substance abuse evaluation, and a psychological evaluation.

In February of 2017, the JDR court heard a hearing on DSS's petition for a permanency planning hearing with a changed goal of adoption and the termination of Willoughby's parental rights. The JDR court terminated these rights and approved the plan goal of adoption. Willoughby appealed to the circuit court, which upheld the termination and adoption order. Willoughby now appeals that decision to this Court.

Willoughby argues that the circuit court erred when, during the termination hearing, it referred to Willoughby testing positive for cocaine on the date of sentencing for an unrelated criminal forgery charge, over which the the same circuit court judge also presided. "[T]he admissibility of evidence is within the discretion of the trial court and [an appellate court] will not reject the decision of the trial court unless [it] find[s] an abuse of discretion." Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44

Va. App. 741, 753, 607 S.E.2d 738, 743 adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (internal quotations and citations omitted). On appeal, "[t]he burden is on appellant to show that the trial court's admission of evidence constitutes reversible error." Dunn v. Commonwealth, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995).

Although the same judge heard both the criminal matter and the termination of parental rights matter associated with Willoughby, all the evidence relating to the criminal matter that the circuit court referenced was admitted at the termination of parental rights hearing through Willoughby's own evidence. In fact, Willoughby herself testified regarding her experience with the criminal justice system. Willoughby also testified that she was currently incarcerated after being convicted of "[d]riving with suspended, [sic] falsifying myself to a police officer and falsely signing two tickets." When asked about her drug tests after leaving a substance abuse and mental health center, Willoughby said they are all clean "except for the one that Judge Higgins gave me when she put me in jail." When counsel for DSS asked Willoughby about her cooking cocaine for her boyfriend and testing positive on her court date, Willoughby said it was "[b]ecause I had in [sic] my hands, and [cocaine] goes through the pores of your skin." Furthermore, while the circuit court judge questioned Willoughby about her drug use at the end of cross-examination, the following exchange occurred without objection:

> THE COURT: and on being positive for cocaine, as I – with the test about how you had cooked the crack, you made crack and you got it into your pores. Am I recalling correctly?
>
> THE WITNESS: Yeah. You can touch it. If you touch it in your hands, it absorbs in your system.
>
> THE COURT: And this was after you had been in [the treatment center]?
>
> THE WITNESS: Yes, ma'am.
>
> THE COURT: And the person that you were cooking it for was Lawrence [Willougby's boyfriend], correct?

THE WITNESS: I was cooking it in general.

THE COURT: But didn't you testify you were cooking for Lawrence? Mom would not let me come home, and I didn't have a place to go, so I went to Lawrence. He didn't know how to cook his own cocaine.

THE WITNESS: He knew how to cook his own cocaine, I'm sure. I don't know why I said that. I was intoxicated the day of the court, Your Honor. You know that. You had me drug-tested.

Therefore, Willoughby made multiple admissions regarding her unrelated criminal case. These admissions were admitted into evidence without objection. Accordingly, the record indicates that the circuit court made references to Willoughby's own admissions about the criminal case. Willoughby made these admissions as part of her testimony during the termination of parental rights hearing—they were admitted into evidence and ripe for consideration by the circuit court as the trier of fact. Therefore, the circuit court did not err when it considered the fact that Willoughby tested positive for cocaine on the date of her sentencing hearing for criminal forgery.

Willoughby additionally argues that the circuit court erred in finding she was afforded a reasonable time to correct conditions of neglect. We disagree.

Willoughby's residual parental rights were terminated pursuant to Code § 16.1-283(B). Before residual parental rights can be terminated under Code § 16.1-283(B), a court must, among other things, find by clear and convincing evidence that it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent within a reasonable period of time. Code § 16.1-283(B). "In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care. Code § 16.1-283(B). However, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been offered to a parent. Nothing in Code

- 4 -

§ 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268, 616 S.E.2d 765, 771 (2005). "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 130, 409 S.E.2d 460, 463-64 (1991) (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

Here, the children were removed from Willoughby's care on February 11, 2016. The removal hearings that are the subject of this appeal were held on June 19, 2017 and June 30, 2017, a year and four months after the children were removed. In that time, Willoughby was offered multiple programs and services to substantially correct the behavior that led to the removal of her children. Willoughby was given a substance abuse evaluation, a psychological evaluation, referred to individual therapy once a week, referred to inpatient treatment at the Life Center of Galax facility, referred to family treatment court, and assigned a parent mentor to help her with transportation since she did not have a driver's license. Despite all of these opportunities, Willoughby was routinely unsuccessful in taking advantage of them. Willoughby left the Galax treatment program before she was supposed to be released—she claimed she was having an allergic reaction to the medications but never provided DSS with medical documentation to substantiate her claim. Additionally, Willoughby moved frequently, making it difficult for DSS to provide consistent transportation. Willoughby was offered work release, but was terminated from the program because she came back from work intoxicated from consuming two bottles of NyQuil. When questioned about her motives for drinking the NyQuil, Willoughby said that she intended to harm herself. Moreover, Willoughby failed to enter the Family Treatment Court program recommended by DSS. She was also ordered by DSS to wear a

SCRAM[1] bracelet for nine months for alcohol monitoring. In that time, there were at least six violations. Furthermore, while the children were in foster care, Willoughby tested positive for cocaine, oxycodone, and THC—she even appeared in court on a criminal matter while intoxicated, which caused the court to revoke her bond. Once, Willoughby arrived drunk for a supervised visit with the children. And, as the circuit court pointed out, Willoughby was consistently involved in abusive and unhealthy relationships with men while the children were in her care.

Finally, Willoughby herself acknowledged that the conditions which resulted in neglect or abuse could not be substantially corrected or eliminated within a reasonable period of time. When asked when she would be ready to get her children back, Willoughby said "[m]aybe a year or so" from the date of the June 30th hearing. Accordingly, although it appears Willoughby did make some efforts to correct the conditions which resulted in the neglect that led to the children's removal, the record supports the circuit court's finding that it was not reasonably likely that she would remedy the issues that resulted in the children's foster care placement within a reasonable time. While DSS provided Willoughby with a number of services, she declined to take advantage of them and neither DSS nor the circuit court could force her to do so. Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64.

For the foregoing reasons, the judgment of the circuit court terminating Willoughby's parental rights is affirmed.

Affirmed.

---

[1] SCRAM is an acronym for Secure Continuous Remote Alcohol Monitoring. The SCRAM bracelet is a monitoring device worn around the ankle which measures blood alcohol content through the wearer's skin.