COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Friedman
Argued at Chesapeake, Virginia


COLTON ALLEN KING

                                                        OPINION BY
v.        Record No. 0397-22-1                   JUDGE FRANK K. FRIEDMAN
                                                        JUNE 6, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Michelle C.F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General; Robin M. Nagel, Assistant Attorney
General, on brief), for appellee.


In *Miller v. Commonwealth*, 25 Va. App. 727, 732 (1997), this Court established a due

process defense for an individual "who takes measures to learn what conduct the government has

proscribed, but is misadvised by the government itself."  Colton Allen King now argues that

*Miller*'s due process defense applies to bar a conviction for possession of a firearm in Virginia

where King relied upon advice from his Pennsylvania probation officer regarding King's right to

possess and use firearms in Pennsylvania.  We find that *Miller* does not apply to such a situation.

We decline King's invitation to extend the parameters of *Miller*, and we affirm his conviction.

Following a bench trial, the Circuit Court for the City of Chesapeake convicted King of

possessing a firearm after an adjudication of delinquency as a juvenile in violation of Code

§ 18.2-308.2(A)(iii).[1]  King's prior adjudication of delinquency occurred in Pennsylvania.  The

---

[1] Code § 18.2-308.2(A)(iii) provides that it is unlawful for a person "to knowingly and
intentionally possess or transport any firearm" if that person is "under the age of 29" and "was

Virginia trial court sentenced King to three years and nine months of imprisonment with three years suspended for the illegal firearm possession.

King first argues that his conviction is fundamentally unfair and is prohibited by *Miller*'s due process exception because, during his residence in Pennsylvania, his Pennsylvania probation officer allegedly made clear that "any loss of rights would be fully restored under Pennsylvania law upon his release from juvenile probation." King further argues that, if *Miller*'s due process exception does not apply to this set of facts, *Miller* should be extended to include "situations where a person is permitted to possess a firearm in the state in which they are convicted[.]"

King also asserts that the trial court erred in sustaining the Commonwealth's objection to a portion of defense counsel's closing argument relating to King's Pennsylvania probation officer's alleged statements to him. Finally, King contends that the trial court erred in refusing to take judicial notice of a Pennsylvania statute governing persons who are prohibited from possessing a firearm as a result of a prior criminal conviction or juvenile adjudication.

We find no trial court error and affirm the judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of King's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

---

adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult, . . . whether such conviction or adjudication occurred under the laws of the Commonwealth, or any other state."

- 2 -

While responding to a call regarding possible drunk and disorderly behavior at Chesapeake Pawn on May 7, 2021, Chesapeake Police Officer Tibbetts encountered King and a female in the area of the store where gun holsters were displayed. King was "sluggish" and "slightly unsteady on his feet." A Glock pistol with an extended magazine was visible in King's right pants pocket. Officer Tibbetts retrieved the firearm with King's permission. The officer determined the gun was stolen and arrested King. King's date of birth was April 19, 1993, making him twenty-eight years old when Officer Tibbetts arrested him.

King was adjudicated delinquent in Pennsylvania on May 6, 2010, when he was seventeen years old, for receiving stolen property. The adjudicatory order describes this charge as "a felony of the third degree" under Pennsylvania law. The Pennsylvania court imposed a two-year period of probation subject to various conditions, including that King would "not be permitted to hunt without the prior approval of the probation department and the court, subject to a further prohibition that may apply in this case under the federal statutes." King told Officer Tibbetts after his 2021 arrest that he believed it was legal for him to possess the firearm.

Testifying on his own behalf, King acknowledged his juvenile delinquency adjudication in Pennsylvania in 2010. He stated, "My probation officer, when I was on probation for that charge, told me that I could possess my guns. I couldn't use them until I got off probation because it was a stipulation, not the law." According to King, the probation officer visited King's home, where firearms were openly displayed. King acknowledged that he was not allowed to hunt without prior permission as a condition of his probation, but claimed that he thought or assumed that he did not lose his "rights to bear arms" because he was a juvenile at the time of the offense. At the time of King's trial for the instant offense, his right to possess a firearm had not been restored in Virginia. King also had accumulated three convictions involving stealing.

During closing argument, the trial court sustained the Commonwealth's objection to a reference to evidence not in the record regarding King's probation officer's statements. The defense suggests that this ruling foreclosed the court from considering the central thrust of King's "due process" argument that King reasonably relied on the Pennsylvania probation officer's statement and believed he could legally possess a gun in Virginia. Following the disputed ruling, however, the trial court permitted defense counsel to argue that King relied on "the content of the relationship with his probation officer and her visiting his home" to conclude "that he could possess a firearm lawfully." Based on this premise, defense counsel further asserted that the "due process" exception recognized in *Miller* was applicable to excuse King's conduct.[2]

Defense counsel also urged the trial court to take judicial notice of 18 Pa. Cons. Stat. § 6105, which governs persons who were prohibited in that state from possessing a firearm due to a prior criminal conviction or juvenile adjudication. The Commonwealth opposed the motion, arguing that it was irrelevant whether Pennsylvania law permitted King to possess a firearm in that state because Virginia law governed his conduct in Chesapeake in 2021. The Commonwealth further argued that King's possession of a firearm violated the terms of Code § 18.2-308.2(A)(iii).

The trial court did not take judicial notice of the Pennsylvania code section, reasoning that the statute did not govern King's behavior in Virginia. The trial court rejected King's contention that a due process exception applied to excuse his conduct. The court found him guilty, and this appeal followed.

---

[2] In *Miller*, 25 Va. App. at 735, the Court recognized the "due process defense" that may apply where "a defendant has reasonably relied upon affirmative assurances that certain conduct is lawful, when those assurances are given by a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue."

ANALYSIS

I. The Due Process Claim

In his first assignment of error, King claims that his conviction was unfair and violated due process because "his probation officer made clear [that] any loss of rights would be fully restored under Pennsylvania law upon his release from juvenile probation."[3] Such a due process defense presents a mixed question of law and fact subject to de novo review on appeal. *See Miller*, 25 Va. App. at 737 n.5 (noting that "'reasonableness' can be determined only after a finding that the content and source of the information are legally sufficient to invoke due process concerns"); *see also McCain v. Commonwealth*, 261 Va. 483, 490 (2001) (noting that when faced with a mixed question of law and fact, the appellate court must defer to the trial court's factual findings but "determine independently" whether constitutional mandates have been met).

In support of this argument, King relies on his own testimony that his Pennsylvania probation officer informed him that he could possess his guns but could not "use them" until King finished his probationary period. King asserts that he reasonably believed, based on the Pennsylvania probation officer's statements and conduct, that any loss of rights he suffered would be fully restored following his release from juvenile probation.[4] King then relies upon *Miller*, in arguing that his due process rights were violated in Virginia when he was convicted of

---

[3] King also notes on appeal that the General Assembly amended Code § 18.2-308.2 in 2015 to provide a procedure for recognition in Virginia of another jurisdiction's restoration of a defendant's right to possess a firearm, and he argues that this amendment should apply here. King did not raise this argument in the trial court, so it is procedurally barred. *See* Rule 5A:18. However, we note that according to King's own testimony, King's right to possess firearms was never restricted in Pennsylvania. A right that was never lost cannot be restored; therefore, the 2015 amendment to Code § 18.2-308.2 would be inapplicable here under King's theory, even if the issue were preserved. *See* 2015 Va. Acts ch. 767.

[4] King did not argue below, nor does he argue on appeal, that he did not know that he had been adjudicated delinquent as a juvenile of an offense that would be a felony if committed by an adult. He also does not argue that Code § 18.2-308.2 requires a showing of such knowledge.

possession of a firearm by a felon after relying on this advice from his Pennsylvania probation officer.

In *Miller*, the defendant knew that his felony conviction meant he could not possess firearms. He sold his hunting guns and hunted with a bow and arrow following his conviction; however, he eventually decided he wanted to hunt with a muzzle-loading rifle. *Miller*, 25 Va. App. at 730. Miller contacted representatives from the Federal Bureau of Alcohol, Tobacco and Firearms and from the Virginia Department of Game and Inland Fisheries; they advised that he could possess a muzzleloader. *Id.* He also asked his Virginia probation officer, who gave him the same advice. *Id.* Miller then purchased and hunted with a muzzle-loading rifle. He eventually was charged with and convicted of possession of a firearm by a felon for that rifle. On appeal, Miller argued that he had relied in good faith on the advice he had been given, and that due process precluded his conviction under those circumstances. *Id.* at 731.

*Miller* "addresses the legal consequences of a violation of the criminal law by an individual who takes measures to learn what conduct the government has proscribed, but is misadvised by the government itself." *Id.* at 732. A due process defense exists "where a defendant has reasonably relied upon affirmative assurances that certain conduct is lawful, when those assurances are given by a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." *Id.* at 735. "The ultimate due process inquiry is whether a defendant's conviction, for reasonably and in good faith doing that which he was told he could do, is fundamentally unfair in light of the content of the information he received and its source." *Id.* at 737.

This due process defense involves two steps. First, "the defendant must establish, as a threshold matter, the legal sufficiency of the content and source of the information received." *Id.*

> With respect to content, the defense is available only where the information upon which the defendant has relied is an affirmative

> assurance that the conduct giving rise to the conviction is lawful. In the absence of such an affirmative assurance, the due process concerns that the defense is designed to protect are not implicated, and the defense fails.

*Id.* at 738. "As to the source of the information, it must be established that the information was received from a 'government official.'" *Id.* It is not enough to prove that the source was a state actor; the defendant must show that the source was "a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." *Id.* at 739.

Second, the trial court must make "a factual determination whether the defendant's reliance upon the information received was reasonable and in good faith." *Id.* at 737. This due process defense is an affirmative defense, and the defendant bears the burden of establishing it. *Id.*

King's argument fails under *Miller* in multiple ways. First, he failed to show "the legal sufficiency of the content and source of the information received." *See id.* "[T]he defense is available only where the information upon which the defendant has relied is an affirmative assurance that the conduct giving rise to the conviction is lawful." *Id.* at 738. Here, King testified that his Pennsylvania probation officer indicated that he could continue to possess firearms. However, he did not testify that his probation officer told him that he could possess firearms *in Virginia*. Nor has he shown that a Pennsylvania probation officer is "charged by law with responsibility for defining permissible conduct with respect to" possession of firearms in Virginia. *See id.* at 739. Further, King failed to demonstrate that his reliance on his probation officer's advice was reasonable and in good faith. This requirement is not met by simply assuming advice given regarding gun possession in Pennsylvania would apply to gun possession in Virginia or any other state.[5]

---

[5] We also note that there is no evidence that King was "misadvised" by a state actor. *Miller*, 25 Va. App. at 732. King's Pennsylvania probation officer appears to have given him

*Miller*, which dealt with a Virginia probation officer advising his probationer on a question of Virginia law, explicitly limits its holding to advice received from Virginia state actors.[6] The *Miller* Court specifically declined to extend its holding to advice from out-of-state actors:

> Many cases involve a defendant who seeks to invoke the defense as a bar to prosecution by one sovereign for advice received from an official of another sovereign. The defense has been nearly universally rejected in this dual-sovereign context. The only exceptions are cases where a defendant has relied on the advice of a state judge with respect to federal law.

*Id.* at 740 (citation omitted). Thus, *Miller* specifically distinguished its holding from the present situation, where King seeks to rely on a Pennsylvania probation officer advising King on a question of Pennsylvania law. In fact, King takes that reliance one step further, seeking to extend his probation officer's advice to apply to Virginia as well, even though there is no evidence that his probation officer ever advised him that he could legally possess a firearm in Virginia.

Because the present situation clearly does not fall within the parameters of *Miller*, we find that King's due process rights were not violated.

## II. King's Attempt to Expand *Miller*

In his second assignment of error, King states: "If the due process exception in *Miller v. Commonwealth*, 25 Va. App. 727 (1997), does not include situations where a person is permitted to possess a firearm in the state in which they are convicted, it should be modified." King asks

---

accurate advice about the law in Pennsylvania at the time. There is no evidence that his probation officer ever gave him advice, accurate or otherwise, about the law in Virginia (or any other jurisdiction).

[6] The *Miller* Court found that the agents from the Federal Bureau of Alcohol, Tobacco and Firearms and from the Virginia Department of Game and Inland Fisheries were not "charged by law with responsibility for defining permissible conduct under Code § 18.2-308.2," but that Miller's probation officer did fall within the due process defense. *Miller*, 25 Va. App. at 742-43.

us to reach beyond our authority, as "[a] holding by one panel of the Court of Appeals of Virginia 'bind[s] all other three-judge panels under the interpanel accord doctrine.'" *White v. Commonwealth*, 67 Va. App. 599, 612 n.7 (2017) (quoting *Startin v. Commonwealth*, 56 Va. App. 26, 39 n.3 (2010) (en banc)). "A decision of one panel protected by the interpanel accord doctrine 'cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court.'" *Id.* (quoting *Congdon v. Congdon*, 40 Va. App. 255, 265 (2003)). In accord with these principles, we decline King's invitation to expand *Miller*.

III.  The Closing Argument Dispute

King argues that a dispute regarding closing argument resulted in the trial court foreclosing consideration of his *Miller* due process argument. "The decision regarding the appropriateness of a closing argument is committed to the discretion of the trial court." *Canipe v. Commonwealth*, 25 Va. App. 629, 639 (1997). "This [C]ourt will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced." *Id.* (alteration in original) (quoting *Cohen v. Power*, 183 Va. 258, 262 (1944)).

Here, the following exchange occurred during closing argument:

> [DEFENSE COUNSEL]:  Here, Mr. King testified that at sentencing he was advised that he was not allowed to hunt. And actually the reason I took so long with the sentencing order earlier is because I was flipping through to see if there was any mention of possessing a firearm in there. There is not but there is a paragraph on maybe the fourth page stating that Mr. King was not allowed to hunt while he was on probation, consistent with his testimony today. And, Your Honor, he testified that his probation officer -- and needless to say but he did testify to it earlier that his probation officer told him that he could.
>
> [COMMONWEALTH]:  Objection. . . . It's not evidence in the record. It's not evidence before the court. It's not appropriate to incorporate items into argument that were excluded from evidence.
>
> THE COURT:  I'm going to sustain that objection.

- 9 -

The trial judge sustained the Commonwealth's objection to this vague statement by King's attorney regarding King's permission to hunt while on probation; counsel stated that King's probation officer "told him that he could," but the evidence actually suggested he could not hunt without prior permission. The defense now asserts that limiting counsel's reference to the phrase "his probation officer told him that he could" related to firearm possession rather than hunting—and that, based on the ruling, the trial court may have inappropriately failed to consider this central aspect of his claim. The record, however, does not support King's reading of the proceedings.[7] In any event, immediately after this ruling, the trial court clearly permitted defense counsel to raise the argument that King had inferred from the Pennsylvania probation officer's statements that King "could possess a firearm lawfully." This argument ultimately did not succeed—but King certainly was not prevented from making the claim.[8]

Contrary to King's assertion on appeal, the record does not reflect that, in sustaining the Commonwealth's objection during closing argument, the trial court refused to consider King's

---

[7] The trial transcript indicates that the prosecution's objection was that King could not hunt without prior permission; there was no evidence to the contrary. Any suggestion that King could hunt without permission while on probation was outside the record.

[8] After the initial ruling, and without objection, defense counsel was permitted to rephrase her position and argue as follows:

> Your Honor, he testified that his probation officer came to his house all the time, that he has had guns on display in the home, and he also -- the first police officer, Officer Tibbetts who testified today said that Mr. King told him that he believed that he could possess a firearm at the time of his arrest. That, coupled with the certified conviction offered by the prosecution showing that he was only prohibited from hunting, as well as Mr. King's testimony about his probation officer coming to the house and seeing guns in his house every time she came to visit, Your Honor, I believe allow him to successfully argue this due process defense, which is he reasonably relied on the certified conviction order, on the statements of his probation officer -- I'm sorry. On the content of the relationship with his probation officer and her visiting his home, he believed that he could possess a firearm lawfully.

position that his probation officer told him that he could possess firearms—even if he could not use them. Nor did the court prevent King from relying on *Miller*. Rather, the trial court ruled that King's legal status vis-a-vis possession of firearms in Pennsylvania during his probation was irrelevant to whether he could lawfully possess a firearm in Virginia in 2021. The court found that King's rights in Virginia were governed by Code § 18.2-308.2 and that the *Miller* rationale did not apply.

"A trial court has broad discretion in the supervision of opening statements and closing argument." *Jones v. Commonwealth*, 71 Va. App. 70, 92 (2019) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 703 (1988)). "[An appellate] court will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced." *Walls v. Commonwealth*, 38 Va. App. 273, 280 (2002) (alteration in original) (quoting *Cohen*, 183 Va. at 262). King has demonstrated no prejudice or abuse of discretion by the trial court in sustaining the Commonwealth's objection during argument. King's closing argument was not improperly restricted in any way. Accordingly, we affirm the trial court's ruling.

IV. The Judicial Notice Question

Finally, King asserts that the trial court erred in refusing to take judicial notice of 18 Pa. Cons. Stat. § 6105, which governs possessing a firearm after conviction of certain offenses or juvenile adjudications in Pennsylvania. Virginia does permit a trial court to take judicial notice of statutes from other jurisdictions in proper cases. Under Code § 19.2-265.2(A),

> [w]henever, in any criminal case it becomes necessary to ascertain what the law, statutory or otherwise, of this Commonwealth, of another state, of the United States, of another country, or of any political subdivision or agency of the same is, or was, at any time, the court shall take judicial notice thereof whether specially pleaded or not.

- 11 -

*See also* Va. R. Evid. 2:202(a) (stating that a trial court "may" take judicial notice of another state's laws). Nonetheless, "the most elementary first step is that '[e]vidence must be relevant to be admissible. It is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."'" *Ragland v. Commonwealth*, 67 Va. App. 519, 535 (2017) (quoting *Payne v. Commonwealth*, 65 Va. App. 194, 217 (2015)). "[E]very fact, 'however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Id.* at 535-36 (alteration in original) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Put another way, evidence has relevance if it tends to cast any light on any material point." *Id.* at 536 (quoting *Thomas*, 44 Va. App. at 753).

Here, the Pennsylvania statute was not relevant, nor was it necessary for the trial court to ascertain Pennsylvania law. As the trial judge reasoned, the Pennsylvania statute is not controlling in Virginia, making it both irrelevant and unnecessary to the trial court. King's conduct in Virginia is governed by the Virginia Code. By its express terms, Code § 18.2-308.2(A)(iii) prohibits possession of a firearm by a person who is under the age of twenty-nine and who was adjudicated delinquent as a juvenile fourteen years of age or older at the time of the felonious delinquent act "under the laws of the Commonwealth, *or any other state . . . .*" *Cartagena v. Commonwealth*, 68 Va. App. 202, 209 (2017); *see also supra* note 1. The evidence was undisputed that King was seventeen years old when he was adjudicated delinquent for a felonious act in Pennsylvania, and he was twenty-eight when Officer Tibbetts arrested him in Chesapeake. Pennsylvania law regarding whether King was permitted to possess a firearm in Pennsylvania following his juvenile adjudication was irrelevant to his guilt or innocence of violating Code § 18.2-308.2(A)(iii) in Virginia. *See Cartagena*, 68 Va. App. at 209. Nor, under the circumstances of this case, was it necessary for the trial court to ascertain the law of

Pennsylvania in order to determine King's guilt or innocence on this charge. The trial court did not err in refusing to take judicial notice of 18 Pa. Cons. Stat. § 6105.

## CONCLUSION

For the foregoing reasons, we affirm the judgment.

*Affirmed.*